## BOUIE ET AL. v. CITY OF COLUMBIA.

No. 10. Argued October 14–15, 1963.—Decided June 22, 1964.

*Matthew J. Perry, Constance Baker Motley* and *Jack Greenberg* argued the cause for petitioners. With them on the brief were *James M. Nabrit III, Charles L. Black, Jr., Juanita Jackson Mitchell, Tucker R. Dearing, Lincoln C. Jenkins, Derrick A. Bell, Jr., William T. Coleman, Jr., Louis H. Pollak, Richard R. Powell, Joseph L. Rauh, Jr.* and *John Silard.*

*David W. Robinson II* and *John W. Sholenberger* argued the cause for respondent. With them on the briefs was *David W. Robinson. Daniel R. McLeod,* Attorney General of South Carolina, entered his appearance for respondent.

*Ralph S. Spritzer,* by special leave of Court, argued the cause for the United States, as *amicus curiae,* urging

reversal. With him on the briefs were *Solicitor General Cox, Assistant Attorney General Marshall, Louis F. Claiborne, Harold H. Greene, Howard A. Glickstein* and *David Rubin.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

This case arose out of a "sit-in" demonstration at Eckerd's Drug Store in Columbia, South Carolina. In addition to a lunch counter, Eckerd's maintained several other departments, including those for retail drugs, cosmetics, and prescriptions. Negroes and whites were invited to purchase and were served alike in all departments of the store with the exception of the restaurant department, which was reserved for whites. There was no evidence that any signs or notices were posted indicating that Negroes would not be served in that department.

On March 14, 1960, the petitioners, two Negro college students, took seats in a booth in the restaurant department at Eckerd's and waited to be served. No one spoke to them or approached them to take their orders for food. After they were seated, an employee of the store put up a chain with a "no trespassing" sign attached. Petitioners continued to sit quietly in the booth. The store manager then called the city police department and asked the police to come and remove petitioners. After the police arrived at the store the manager twice asked petitioners to leave. They did not do so. The Assistant Chief of Police then asked them to leave. When petitioner Bouie asked "For what?" the Assistant Chief replied: "Because it's a breach of the peace . . . ." Petitioners still refused to leave, and were then arrested. They were charged with breach of the peace in violation of § 15–909, Code of Laws of South Carolina, 1952, but were not convicted. Petitioner Bouie was also charged

with resisting arrest, and was convicted, but the conviction was reversed by the State Supreme Court for insufficiency of evidence. Both petitioners were also charged with criminal trespass in violation of § 16–386 of the South Carolina Code of 1952 (1960 Cum. Supp.);[1] on this charge they were convicted, and their convictions were affirmed by the State Supreme Court over objections based upon the Due Process and Equal Protection Clauses of the Fourteenth Amendment. 239 S. C. 570, 124 S. E. 2d 332. We granted certiorari to review the judgments affirming these trespass convictions. 374 U. S. 805.

We do not reach the question presented under the Equal Protection Clause, for we find merit in petitioners' contention under the Due Process Clause and reverse the judgments on that ground.

Petitioners claim that they were denied due process of law either because their convictions under the trespass statute were based on no evidence to support the charge, see *Thompson* v. *Louisville*, 362 U. S. 199, or because the statute failed to afford fair warning that the conduct for which they have now been convicted had been made a crime. The terms of the statute define the prohibited conduct as "entry upon the lands of another . . . after notice from the owner or tenant prohibiting such en-

---

[1] That section provides: *"Entry on lands of another after notice prohibiting same.*—Every entry upon the lands of another where any horse, mule, cow, hog or any other livestock is pastured, or any other lands of another, after notice from the owner or tenant prohibiting such entry, shall be a misdemeanor and be punished by a fine not to exceed one hundred dollars, or by imprisonment with hard labor on the public works of the county for not exceeding thirty days. When any owner or tenant of any lands shall post a notice in four conspicuous places on the borders of such land prohibiting entry thereon, a proof of the posting shall be deemed and taken as notice conclusive against the person making entry, as aforesaid for the purpose of trespassing."

try . . . ." See note 1, *supra.* Petitioners emphasize
the conceded fact that they did not commit such conduct;
they received no "notice . . . prohibiting such entry"
either before they entered Eckerd's Drug Store (where in
fact they were invited to enter) or before they entered the
restaurant department of the store and seated themselves
in the booth. Petitioners thus argue that, under the
statute as written, their convictions would have to be
reversed for want of evidence under the *Thompson* case.
The argument is persuasive but beside the point, for the
case in its present posture does not involve the statute "as
written." The South Carolina Supreme Court, in affirm-
ing petitioners' convictions, construed the statute to cover
not only the act of entry on the premises of another after
receiving notice not to enter, but also the act of remain-
ing on the premises of another after receiving notice to
leave.[2] Under the statute as so construed, it is clear that
there was evidence to support petitioners' convictions, for
they concededly remained in the lunch counter booth
after being asked to leave. Petitioners contend, how-
ever, that by applying such a construction of the statute
to affirm their convictions in this case, the State has pun-
ished them for conduct that was not criminal at the time
they committed it, and hence has violated the require-
ment of the Due Process Clause that a criminal statute
give fair warning of the conduct which it prohibits. We
agree with this contention.

The basic principle that a criminal statute must give
fair warning of the conduct that it makes a crime has

---

[2] This construction of the statute was first announced by the South
Carolina Supreme Court in *City of Charleston* v. *Mitchell,* 239 S. C.
376, 123 S. E. 2d 512, decided on December 13, 1961, certiorari
granted and judgment reversed, *post,* p. 551. In the instant case and
in *City of Columbia* v. *Barr,* 239 S. C. 395, 123 S. E. 2d 521, reversed,
*ante,* p. 146, the South Carolina Supreme Court simply relied on its
ruling in *Mitchell.*

often been recognized by this Court. As was said in *United States* v. *Harriss,* 347 U. S. 612, 617,

> "The constitutional requirement of definiteness is violated by a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed."

Thus we have struck down a state criminal statute under the Due Process Clause where it was not "sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties." *Connally* v. *General Const. Co.,* 269 U. S. 385, 391. We have recognized in such cases that "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law," *ibid.,* and that "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *Lanzetta* v. *New Jersey,* 306 U. S. 451, 453.[3]

It is true that in the *Connally* and *Lanzetta* cases, and in other typical applications of the principle, the uncertainty as to the statute's prohibition resulted from vague or overbroad language in the statute itself, and the Court concluded that the statute was "void for vagueness." The instant case seems distinguishable, since on its face the language of § 16–386 of the South Carolina Code was admirably narrow and precise; the statute applied only to "entry upon the lands of another . . . after

---

[3] See also *McBoyle* v. *United States,* 283 U. S. 25, 27; *United States* v. *Cardiff,* 344 U. S. 174, 176–177; *Pierce* v. *United States,* 314 U. S. 306, 311.

notice . . . prohibiting such entry . . . ." The thrust
of the distinction, however, is to produce a potentially
greater deprivation of the right to fair notice in this sort
of case, where the claim is that a statute precise on its
face has been unforeseeably and retroactively expanded
by judicial construction, than in the typical "void for
vagueness" situation. When a statute on its face is
vague or overbroad, it at least gives a potential defendant
some notice, by virtue of this very characteristic, that a
question may arise as to its coverage, and that it may be
held to cover his contemplated conduct. When a statute
on its face is narrow and precise, however, it lulls the
potential defendant into a false sense of security, giving
him no reason even to suspect that conduct clearly outside
the scope of the statute as written will be retroactively
brought within it by an act of judicial construction. If
the Fourteenth Amendment is violated when a person
is required "to speculate as to the meaning of penal
statutes," as in *Lanzetta,* or to "guess at [the statute's]
meaning and differ as to its application," as in *Connally,*
the violation is that much greater when, because the un-
certainty as to the statute's meaning is itself not revealed
until the court's decision, a person is not even afforded
an opportunity to engage in such speculation before com-
mitting the act in question.

There can be no doubt that a deprivation of the right
of fair warning can result not only from vague statutory
language but also from an unforeseeable and retroactive
judicial expansion of narrow and precise statutory lan-
guage. As the Court recognized in *Pierce* v. *United
States,* 314 U. S. 306, 311, "judicial enlargement of a
criminal Act by interpretation is at war with a funda-
mental concept of the common law that crimes must
be defined with appropriate definiteness." Even where
vague statutes are concerned, it has been pointed out that
the vice in such an enactment cannot "be cured in a given

case by a construction in that very case placing valid limits on the statute," for

> "the objection of vagueness is twofold: inadequate guidance to the individual whose conduct is regulated, and inadequate guidance to the triers of fact. The former objection could not be cured retrospectively by a ruling either of the trial court or the appellate court, though it might be cured for the future by an authoritative judicial gloss. . . ." Freund, The Supreme Court and Civil Liberties, 4 Vand. L. Rev. 533, 541 (1951).

See Amsterdam, Note, 109 U. Pa. L. Rev. 67, 73–74, n. 34. If this view is valid in the case of a judicial construction which adds a "clarifying gloss" to a vague statute, *id.,* at 73, making it narrower or more definite than its language indicates, it must be *a fortiori* so where the construction unexpectedly broadens a statute which on its face had been definite and precise. Indeed, an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law, such as Art. I, § 10, of the Constitution forbids. An *ex post facto* law has been defined by this Court as one "that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action," or "that *aggravates* a *crime,* or makes it *greater* than it was, when committed." *Calder* v. *Bull,* 3 Dall. 386, 390.[4] If a state legislature is barred by the *Ex Post Facto* Clause from passing such a law, it must follow that a State Supreme Court is barred by the Due Process Clause from achieving precisely the

---

[4] Thus, it has been said that "No one can be criminally punished in this country, except according to a law prescribed for his government by the sovereign authority before the imputed offence was committed, and which existed as a law at the time." *Kring* v. *Missouri,* 107 U. S. 221, 235. See *Fletcher* v. *Peck,* 6 Cranch 87, 138; *Cummings* v. *Missouri,* 4 Wall. 277, 325–326.

same result by judicial construction. Cf. *Smith* v. *Cahoon*, 283 U. S. 553, 565. The fundamental principle that "the required criminal law must have existed when the conduct in issue occurred," Hall, General Principles of Criminal Law (2d ed. 1960), at 58–59, must apply to bar retroactive criminal prohibitions emanating from courts as well as from legislatures. If a judicial construction of a criminal statute is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue," it must not be given retroactive effect. *Id.*, at 61.

The basic due process concept involved is the same as that which the Court has often applied in holding that an unforeseeable and unsupported state-court decision on a question of state procedure does not constitute an adequate ground to preclude this Court's review of a federal question. See, *e. g., Wright* v. *Georgia,* 373 U. S. 284, 291; *N. A. A. C. P.* v. *Alabama,* 357 U. S. 449, 456–458; *Barr* v. *City of Columbia, ante,* p. 146. The standards of state decisional consistency applicable in judging the adequacy of a state ground are also applicable, we think, in determining whether a state court's construction of a criminal statute was so unforeseeable as to deprive the defendant of the fair warning to which the Constitution entitles him. In both situations, "a federal right turns upon the status of state law as of a given moment in the past— or, more exactly, the appearance to the individual of the status of state law as of that moment . . . ." 109 U. Pa. L. Rev., *supra,* at 74, n. 34. When a state court overrules a consistent line of procedural decisions with the retroactive effect of denying a litigant a hearing in a pending case, it thereby deprives him of due process of law "in its primary sense of an opportunity to be heard and to defend [his] substantive right." *Brinkerhoff-Faris Trust & Sav. Co.* v. *Hill,* 281 U. S. 673, 678. When a similarly unforeseeable state-court construction of a criminal statute is applied retroactively to subject a per-

son to criminal liability for past conduct, the effect is to deprive him of due process of law in the sense of fair warning that his contemplated conduct constitutes a crime. Applicable to either situation is this Court's statement in *Brinkerhoff-Faris, supra,* that "if the result above stated were attained by an exercise of the State's legislative power, the transgression of the due process clause of the Fourteenth Amendment would be obvious," and "The violation is none the less clear when that result is accomplished by the state judiciary in the course of construing an otherwise valid . . . state statute." *Id.,* at 679–680.

Applying those principles to this case, we agree with petitioners that § 16–386 of the South Carolina Code did not give them fair warning, at the time of their conduct in Eckerd's Drug Store in 1960, that the act for which they now stand convicted was rendered criminal by the statute. By its terms, the statute prohibited only "entry upon the lands of another . . . after notice from the owner . . . prohibiting such entry . . . ." There was nothing in the statute to indicate that it also prohibited the different act of remaining on the premises after being asked to leave. Petitioners did not violate the statute as it was written; they received no notice before entering either the drugstore or the restaurant department. Indeed, they knew they would not receive any such notice before entering the store, for they were invited to purchase everything except food there. So far as the words of the statute were concerned, petitioners were given not only no "fair warning," but no warning whatever, that their conduct in Eckerd's Drug Store would violate the statute.[5]

---

[5] We think it irrelevant that petitioners at one point testified that they had intended to be arrested. The determination whether a criminal statute provides fair warning of its prohibitions must be made on the basis of the statute itself and the other pertinent law, rather than on the basis of an *ad hoc* appraisal of the subjective

The interpretation given the statute by the South Carolina Supreme Court in the *Mitchell* case, note 2, *supra,* so clearly at variance with the statutory language, has not the slightest support in prior South Carolina decisions. Far from equating entry after notice not to enter with remaining on the premises after notice to leave, those decisions emphasized that proof of notice before entry was necessary to sustain a conviction under § 16–386. Thus in *State* v. *Green,* 35 S. C. 266, 14 S. E. 619 (1892), the defendant was apparently in possession of the land when he was told to leave. Yet the prosecution was not for remaining on the land after such notice but for returning later, and the court said, "under the view we take of this provision of our laws, when the owner or tenant in possession of land forbids entry thereon, any person with notice who afterwards enters such premises is liable to punishment." 35 S. C., at 268, 14 S. E., at 620. In *State* v. *Cockfield,* 15 Rich. Law (S. C.) 53, 55 (1867), the court, after quoting the statute's provision (as it then read) that "Every entry on the inclosed or uninclosed lands of another, after notice from the owner or tenant, prohibiting the same, shall be deemed a misdemeanor," stated that this language "will not permit the Court to suppose that it was intended to have any other than the ordinary acceptation." See also *State* v. *Mays,* 24 S. C. 190 (1885); *State* v. *Tenny,* 58 S. C. 215, 36 S. E. 555 (1900); *State* v. *Olasov,* 133 S. C. 139, 130 S. E. 514 (1925). In sum, in the 95 years between the enactment of the statute in 1866 and the 1961 decision in the *Mitchell* case, the South Carolina cases construing the statute uniformly empha-

---

expectations of particular defendants. But apart from that, the record is silent as to what petitioners intended to be arrested for, and in fact what they *were* arrested for was not trespass but breach of the peace—on which charge they were not convicted. Hence there is no basis for an inference that petitioners intended to be arrested *for violating this statute,* either by remaining on the premises after being asked to leave or by any other conduct.

sized the notice-before-entry requirement, and gave not the slightest indication that that requirement could be satisfied by proof of the different act of remaining on the land after being told to leave.

In holding in *Mitchell* that "entry . . . after notice" includes remaining after being asked to leave, the South Carolina Supreme Court did not cite any of the cases in which it had previously construed the same statute. The only two South Carolina cases it did cite were simply irrelevant; they had nothing whatever to do with the statute, and nothing to do even with the general field of criminal trespass, involving instead the law of *civil* trespass—which has always been recognized, by the common law in general and by South Carolina law in particular, as a field quite distinct and separate from criminal trespass. *Shramek* v. *Walker,* 152 S. C. 88, 149 S. E. 331 (1929), was an action for damages for an assault and battery committed by a storekeeper upon a customer who refused to leave the store after being told to do so; the defense was that the storekeeper was entitled to use reasonable force to eject an undesirable customer. The validity of such a defense was recognized, the court stating that "while the entry by one person on the premises of another may be lawful, by reason of express or implied invitation to enter, his failure to depart, on the request of the owner, will make him a trespasser and justify the owner in using reasonable force to eject him." 152 S. C., at 99–100, 149 S. E., at 336. *State* v. *Williams,* 76 S. C. 135, 56 S. E. 783 (1907), was a murder prosecution in which the defense was similarly raised that the victim was a trespasser against whom the defendant was entitled to use force, and the court approved the trial judge's instruction that a person remaining on another's premises after being told to leave is a trespasser and may be ejected by reasonable force. 76 S. C., at 142, 56 S. E., at 785.

Both cases thus turned wholly upon tort principles. For that reason they had no relevance whatever, under

South Carolina law prior to the *Mitchell* case, to § 16–386 in particular or to criminal trespass in general. It is one thing to say that a person remaining on another's land after being told to leave may be ejected with reasonable force or sued in a civil action, and quite another to say he may be convicted and punished as a criminal. The clear distinction between civil and criminal trespass is well recognized in the common law. Thus it is stated, in 1 Bishop, Criminal Law, § 208 (9th ed. 1923) that

> "In civil jurisprudence, when a man does a thing by permission and not by license, and, after proceeding lawfully part way, abuses the liberty the law had given him, he shall be deemed a trespasser from the beginning by reason of this subsequent abuse. But this doctrine does not prevail in our criminal jurisprudence; for no man is punishable criminally for what was not criminal when done, even though he afterward adds either the act or the intent, yet not the two together."

Unless a trespass is "committed under such circumstances as to constitute an *actual* breach of the peace, it is not indictable at common law, but is to be redressed by a civil action only." Clark and Marshall, Crimes (5th ed. 1952), at 607.[6] There is no reason to doubt that, until the *Mitchell* case, this basic distinction was recognized in South Carolina itself. In *State* v. *Cargill*, 2 Brev. 114 (1810), the South Carolina Supreme Court reversed a conviction for forcible entry, saying

> "If the prosecutor had a better right to the possession than the defendant, he might have availed himself of his civil remedy. *The law will not punish, criminally, a private injury of this nature.*

---

[6] Accord, *Krauss* v. *State*, 216 Md. 369, 140 A. 2d 653 (1958); 2 Wharton, Criminal Law and Procedure, § 868 (1957); Hochheimer, Law of Crimes and Criminal Procedure, §§ 327–329 (2d ed.).

> There must be, at least, some appearance of force, by acts, words, or gestures, to constitute the offence charged." *Id.,* at 115. (Italics added.)

Under pre-existing South Carolina law the two cases relied on by the State Supreme Court were thus completely unrelated, not only to this particular statute, but to the entire field of criminal trespass. The pre-existing law gave petitioners no warning whatever that this criminal statute would be construed, despite its clear language and consistent judicial interpretation to the contrary, as incorporating a doctrine found only in civil trespass cases.[7]

The South Carolina Supreme Court in *Mitchell* also cited North Carolina decisions in support of its construction of the statute. It would be a rare situation in which the meaning of a statute of another State sufficed to afford a person "fair warning" that his own State's stat-

---

[7] Indeed, it appears that far from being understood to incorporate a doctrine of civil trespass, § 16–386 is considered in South Carolina not to incorporate *any* common law of trespass, either criminal or civil—in other words, not to be a "trespass" statute at all. South Carolina has long had on its books, side by side with § 16–386, a statute that does deal *eo nomine* with "trespass"; § 16–382 makes it unlawful to "wilfully, unlawfully and maliciously . . . commit any . . . trespass upon real property in the possession of another . . . ." When South Carolina in 1960 enacted legislation dealing specifically with a refusal to leave upon request (thus filling the gap which the South Carolina Supreme Court has filled by judicial construction in *Mitchell* and in this case), it apparently gave express recognition to the distinction between the two statutes, declaring that "The provisions of this section shall be construed as being in addition to, and not as superseding, any other statutes of the State relating to trespass or entry on lands of another." South Carolina Code of 1962, § 16–388. Thus it would seem that § 16–386 is regarded by state law as dealing not with "trespass," but rather with the distinct offense of "entry on lands of another" after notice not to enter. The contention that the statute was understood to incorporate a doctrine of civil trespass law is therefore all the more untenable.

ute meant something quite different from what its words said. No such situation is presented here. The meaning ascribed by the North Carolina Supreme Court to the North Carolina criminal trespass statute—also a ruling first announced in a "sit-in" case of recent vintage—was expressly based on what criminal trespass cases in North Carolina had "repeatedly held." *State* v. *Clyburn,* 247 N. C. 455, 462, 101 S. E. 2d 295, 300 (1958). As was demonstrated above, South Carolina's criminal trespass decisions prior to *Mitchell* had "repeatedly held" no such thing, nor had they even intimated the attribution of such a meaning to the words "entry . . . after notice" in § 16–386. Moreover, if the law of other States is indeed to be consulted, it is the prior law of South Carolina, not the law first announced in *Mitchell,* that is consonant with the traditional interpretation of similar "entry . . . after notice" statutes by other state courts. Thus in *Goldsmith* v. *State,* 86 Ala. 55, 5 So. 480 (1889), the Alabama court construed § 3874 of the Alabama Code of 1887, imposing criminal penalties on one who "enters . . . after having been warned . . . not to do so," and held that

> "There must be a warning first, and an entry afterwards. One already in possession, even though a trespasser, or there by that implied permission which obtains in society, can not, by a warning then given, be converted into a violator of the statute we are construing, although he may violate some other law, civil or criminal." 86 Ala., at 57, 5 So., at 480–481.[8]

In *Martin* v. *City of Struthers,* 319 U. S. 141, 147, this Court noted that "Traditionally the American law pun-

---

[8] See *Pennsylvania R. Co.* v. *Fucello,* 91 N. J. L. 476, 477, 103 A. 988 (1918); *Commonwealth* v. *Richardson,* 313 Mass. 632, 48 N. E. 2d 678 (1943); *Brunson* v. *State,* 140 Ala. 201, 203, 37 So. 197, 198 (1904).

ishes persons who enter onto the property of another after having been warned by the owner to keep off." Section 16–386 of the South Carolina Code is simply an example of this "traditional American law." In construing such statutes, other state courts have recognized that they apply only to "entry onto" the property of another after notice not to enter, and have not interpreted them to cover also the distinct act of remaining on the property after notice to leave. The South Carolina Supreme Court's retroactive application of such a construction here is no less inconsistent with the law of other States than it is with the prior case law of South Carolina and, of course, with the language of the statute itself.

Our conclusion that petitioners had no fair warning of the criminal prohibition under which they now stand convicted is confirmed by the opinion held in South Carolina itself as to the scope of the statute. The state legislature was evidently aware of no South Carolina authority to the effect that remaining on the premises after notice to leave was included within the "entry after notice" language of § 16–386. On May 16, 1960, shortly after the "sit-in" demonstration in this case and prior to the State Supreme Court's decision in *Mitchell,* the legislature enacted § 16–388 of the South Carolina Code, expressly making criminal the act of failing and refusing "to leave immediately upon being ordered or requested to do so." Similarly, it evidently did not occur to the Assistant Chief of Police who arrested petitioners in Eckerd's Drug Store that their conduct violated § 16–386, for when they asked him why they had to leave the store, he answered, "Because it's a breach of the peace . . . ." And when he was asked further whether he was assisting the drugstore manager in ousting petitioners, he answered that he was not, but rather that "My purpose was that they were creating a disturbance there in the store, a breach of the peace in my

presence, and that was my purpose." It thus appears that neither the South Carolina Legislature nor the South Carolina police anticipated the present construction of the statute.

We think it clear that the South Carolina Supreme Court, in applying its new construction of the statute to affirm these convictions, has deprived petitioners of rights guaranteed to them by the Due Process Clause. If South Carolina had applied to this case its new statute prohibiting the act of remaining on the premises of another after being asked to leave, the constitutional proscription of *ex post facto* laws would clearly invalidate the convictions. The Due Process Clause compels the same result here, where the State has sought to achieve precisely the same effect by judicial construction of the statute. While such a construction is of course valid for the future, it may not be applied retroactively, any more than a legislative enactment may be, to impose criminal penalties for conduct committed at a time when it was not fairly stated to be criminal. Application of this rule is particularly compelling where, as here, the petitioners' conduct cannot be deemed improper or immoral. Compare *McBoyle* v. *United States,* 283 U. S. 25.[9]

In the last analysis the case is controlled, we think, by the principle which Chief Justice Marshall stated for the Court in *United States* v. *Wiltberger,* 5 Wheat. 76, 96:

> "The case must be a strong one indeed, which would justify a Court in departing from the plain

---

[9] See Freund, 4 Vand. L. Rev., *supra,* at 540: "In applying the rule against vagueness or overbroadness something . . . should depend on the moral quality of the conduct. In order not to chill conduct within the protection of the Constitution and having a genuine social utility, it may be necessary to throw the mantle of protection beyond the constitutional periphery, where the statute does not make the boundary clear."

meaning of words, especially in a penal act, in search of an intention which the words themselves did not suggest. To determine that a case is within the intention of a statute, its language must authorise us to say so. It would be dangerous, indeed, to carry the principle, that a case which is within the reason or mischief of a statute, is within its provisions, so far as to punish a crime not enumerated in the statute, because it is of equal atrocity, or of kindred character, with those which are enumerated. . . ."

The crime for which these petitioners stand convicted was "not enumerated in the statute" at the time of their conduct. It follows that they have been deprived of liberty and property without due process of law in contravention of the Fourteenth Amendment.

*Reversed.*

MR. JUSTICE GOLDBERG, with whom THE CHIEF JUSTICE joins, would, while joining in the opinion and judgment of the Court, also reverse for the reasons stated in the concurring opinion of MR. JUSTICE GOLDBERG in *Bell* v. *Maryland, ante,* p. 286.

MR. JUSTICE DOUGLAS would reverse for the reasons stated in his opinion in *Bell* v. *Maryland, ante,* p. 242.

MR. JUSTICE BLACK, with whom MR. JUSTICE HARLAN and MR. JUSTICE WHITE join, dissenting.

This case arose out of a "sit-in" demonstration which took place at Eckerd's Drug Store in Columbia, South Carolina. The petitioners, two Negro college students, went to the store, took seats in a booth in the restaurant department, and waited to be served. The store's policy was to sell to Negroes as well as whites in all departments except the restaurant. After petitioners sat down, a store employee put up a chain with a "no trespassing"

sign attached. Petitioners nevertheless continued to sit quietly in the booth. The store manager then called the city police department and asked the police to come and remove petitioners. After the police arrived at the store the manager twice asked petitioners to leave. They did not do so. The Chief of Police then twice asked them to leave. When they again refused, he arrested them both. They were charged with criminal trespass in violation of § 16–386 of the South Carolina Code,[1] tried in Recorder's Court, and found guilty.[2] On appeal the County Court in an unreported opinion affirmed the convictions. Petitioners then appealed to the Supreme Court of South Carolina, which likewise affirmed over petitioners' objections that by convicting them the State was denying them due process of law and equal protection of the laws as guaranteed by the Fourteenth Amendment. 239 S. C. 570, 124 S. E. 2d 332. This

---

[1] Section 16–386, Code of Laws of South Carolina, 1952 (1960 Supp.), provides:

"*Entry on lands of another after notice prohibiting same.*—Every entry upon the lands of another where any horse, mule, cow, hog or any other livestock is pastured, or any other lands of another, after notice from the owner or tenant prohibiting such entry, shall be a misdemeanor and be punished by a fine not to exceed one hundred dollars, or by imprisonment with hard labor on the public works of the county for not exceeding thirty days. When any owner or tenant of any lands shall post a notice in four conspicuous places on the borders of such land prohibiting entry thereon, a proof of the posting shall be deemed and taken as notice conclusive against the person making entry as aforesaid for the purpose of trespassing."

[2] Both petitioners were also charged with breach of the peace in violation of § 15–909, Code of Laws of South Carolina, 1952, but were not convicted. Petitioner Bouie in addition was charged with and convicted of resisting arrest; that conviction was affirmed by the County Court but reversed by the State Supreme Court for insufficiency of evidence.

Court granted certiorari to consider these questions. 374 U. S. 805.

It is not contradicted that the store manager denied petitioners service and asked them to leave only because of the store's acknowledged policy of not serving Negroes in its restaurant. Apart from the fact that they remained in the restaurant after having been ordered to leave, petitioners' conduct while there was peaceful and orderly. They simply claimed that they had a right to be served; the manager insisted, as the State now insists, that he had a legal right to choose his own customers and to have petitioners removed from the restaurant after they refused to leave at his request. We have stated today in *Bell* v. *Maryland, ante,* p. 318, our belief that the Fourteenth Amendment does not of its own force compel a restaurant owner to accept customers he does not want to serve, even though his reason for refusing to serve them may be his racial prejudice, adherence to local custom, or what he conceives to be his economic self-interest, and that the arrest and conviction of a person for trespassing in a restaurant under such circumstances is not the kind of "state action" forbidden by the Fourteenth Amendment. Here as in the *Bell* case there was, so far as has been pointed out to us, no city ordinance, official utterance, or state law of any kind tending to prevent Eckerd's from serving these petitioners had it chosen to do so. Compare *Robinson* v. *Florida, ante,* p. 153; *Lombard* v. *Louisiana,* 373 U. S. 267; *Peterson* v. *City of Greenville,* 373 U. S. 244. On the first question here raised, therefore, our opinion in *Bell* v. *Maryland* is for us controlling.

Petitioners also contend that they were denied due process of law either because their conviction under the trespass statute was based on no evidence to support the charge, cf. *Thompson* v. *City of Louisville,* 362 U. S.

199, or because that statute as applied was so vague and indefinite that it failed to furnish fair warning that it prohibited a person who entered the property of another without notice not to do so from remaining after being asked to leave, cf. *Edwards* v. *South Carolina*, 372 U. S. 229; *Cantwell* v. *Connecticut*, 310 U. S. 296; *Lanzetta* v. *New Jersey*, 306 U. S. 451. Under the State Supreme Court's construction of the statute, it is clear that there was evidence to support the conviction. There remains to be considered, therefore, only the vagueness contention, which rests on the argument that since the statutory language forbids only "entry upon the lands of another . . . after notice . . . prohibiting such entry," the statute cannot fairly be construed as prohibiting a person from remaining on property after notice to leave. We voted to sustain a Maryland trespass statute [3] against an identical challenge in *Bell* v. *Maryland, supra.* While there is some difference in the language of the South Carolina and Maryland statutes—the Maryland statute prohibited entering or crossing over the lands of another after notice not to do so, while South Carolina's statute speaks only of entry and not of crossing over—this distinction has no relevance to the statute's prohibition against remaining after being asked to leave. In holding that the South Carolina statute forbids remaining after having been asked to leave as well as entry after notice not to do so, the South Carolina courts relied in part on the fact that it has long been accepted as the common law of that State that a person who enters upon the property of another by invitation becomes a trespasser if he refuses to leave when asked to do so. See, *e. g., Shramek* v. *Walker*, 152 S. C. 88, 149 S. E. 331 (1929); *State* v. *Williams*, 76 S. C. 135, 142, 56 S. E. 783, 785 (1907); *State* v. *Lazarus*, 1 Mill Const. 34 (1817). We cannot

---

[3] Md. Code, Art. 27, § 577.

believe that either the petitioners [4] or anyone else could have been misled by the language of this statute into believing that it would permit them to stay on the property of another over the owner's protest without being guilty of trespass.

We would affirm.

---

[4] The petitioners testified that they had agreed the day before to "sit in" at the drugstore restaurant. One petitioner said that he had intended to be arrested; the other said that he had the same purpose "if it took that."