Michael L. LOVE, Petitioner,
v.
C. J. FITZHARRIS et al., Respondent.
No. 51906.

United States District Court,
N. D. California.
March 13, 1970.

Patrick Lynch, Los Angeles, Cal., for petitioner.

Atty. Gen. of State of California, Thomas C. Lynch, Gary Garfinkle, San Francisco, Cal., for respondents.

## ORDER GRANTING RELIEF BY WAY OF HABEAS CORPUS

WOLLENBERG, District Judge.

Petitioner, charged with possession of heroin for sale, was committed, prior to trial, for observation at the California Rehabilitation Center from which he escaped one month later. He was rearrested in November, 1965, and charged with a second violation of California Health and Safety Code § 11500.5. He again escaped, and when recaptured pleaded guilty to the second possession charge as well as to the escape charges which had been brought. On March 22, 1966, petitioner was given concurrent terms for these offenses. On July 22, he was given another, consecutive, sentence for the original heroin charge.

On August 3, 1966, petitioner received a "Notice of Legal Status" which set his minimum eligible parole date ("M.E. P.D.") at three years and four months. This date was set by the Adult Authority which at that time deemed Penal Code § 3049 [1] to control cases where prisoners were sentenced to two or more consecutive terms for violation of Health and Safety Code § 11500.5.[2]  On August

---

[1]. "[A]ny prisoner * * * whose minimum term of imprisonment is more than one year, may be paroled at any time after the expiration of one-third of the minimum term."

[2]. "[Any violator of this section] shall not be eligible for release * * * on parole * * * until he has served not less than two and one-half years in prison."

25, however, the Adult Authority, on the advice of the Attorney General, changed its interpretation of P.C. § 3049 and H. & S. Code § 11500.5 in such a way that persons serving subsequent sentences under § 11500.5 could not be eligible for parole until they had served at least two and one-half years out of each of the sentences they had been given. This new interpretation of the relevant statutes, though promulgated *after* petitioner had been tried and convicted of both his violations of § 11500.5, was applied to him. Another "Notice of Legal Status" was sent to petitioner, informing him that his M.E.P.D. was now five years, rather than three years and four months, from the time he had begun serving his sentences. Petitioner argues persuasively that this retroactive application of the Adult Authority's new interpretation of the relevant statutes violates the *ex post facto* principle.

The state relies on language to the effect that the prohibition of *ex post facto* enactments applies principally to legislative bodies, does not apply to inconsistent judicial interpretations of statutes, and should therefore not be imposed upon interpretations of statutes by administrative agencies, Frank v. Mangum, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915); James v. United States, 366 U.S. 213, 247–248, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1960) (concurring opinion). But even the language cited by the State admits that the due process requirements of warning and notice apply to judicial interpretations. More specifically, all parties herein grant that under Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964), that a statute cannot be reinterpreted by legislature *or* court in such a way as not to give "fair warning of the conduct which it prohibits".

The crux of the instant case is that the State would confine *Bouie* to the above quoted language. It is said that petitioner herein at all times knew that his *conduct* was criminal, and that the reinterpretation here challenged affected only the nature of the punishment to which he would be subject. Thus, it is argued that though the Supreme Court in *Bouie* spoke of any "unforeseeable judicial enlargement of a criminal statute" as operating like an *ex post facto* law, the decision itself should only be applied where the defendant's conduct, without the reinterpretation of the statute, would not be deemed improper or immoral. United States ex rel. Almeida v. Rundle, D.C., 255 F.Supp. 936 (1966). The problem, according to the State, should be reduced to one of fair warning of the criminal nature of the conduct involved.

The *ex post facto* prohibition contained in Art. 1, § 9, cl. 3 of the United States Constitution has long been held to bar imposition by a legislature of a greater penalty upon a defendant than was provided for by the law at the time of his offense. Both federal and state courts have determined that increases in parole requirements by legislative enactment are subject to this variation of the *ex post facto* principle. Lindsey v. Washington, 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1937); Greenfield v. Scafati, D.C., 277 F.Supp. 644 (1967); In re Estrada, 63 Cal.2d 740, 48 Cal.Rptr. 172, 408 P.2d 948 (1965); In re Griffin, 63 Cal.2d 757, 48 Cal.Rptr. 183, 408 P.2d 959 (1965). *Bouie, cit. supra* extended the *ex post facto* principle to judicial reinterpretations of statutes which fail to give fair warning to defendants of the criminal nature of a given course of conduct. This Court sees no reason to say that the logical import of *Bouie* was not to extend the *ex post facto* principle in all its ramifications to any change in the law, whether wrought by legislative amendment, judicial construction, or administrative reinterpretation, which is applied retroactively so as to deprive a criminal defendant of fair notice not only of the criminal nature of his act but also of the punishment to which he will be subject upon conviction.

It is worth mentioning that it is not only the defendant who should be apprised of the full consequences of

his acts. The trial judge as well must be able to rely on established interpretations of punishment statutes. Otherwise his decisions regarding the consecutive or concurrent nature of a subsequent sentence would be made without knowledge of their real consequences.

Accordingly, it is hereby ordered that the named defendant herein, and the California Adult Authority, reinstate petitioner's Minimum Eligible Parole Date to that which was indicated in the "Notice of Legal Status" sent to petitioner on August 3, 1966, with appropriate credit for time served. Since petitioner began serving his sentences on April 12, 1966, he is thus to be deemed to have been eligible for a hearing on parole eligibility on or before August 12, 1969. Named defendant and the California Adult Authority are, in good faith, to advance petitioner's status for parole as if this original hearing had occurred on or before the above mentioned date.