UNITED STATES of America ex rel. Leonard E. HARDEMAN, Petitioner,

v.

Roger E. WELLS, Sheriff Essex County, Commonwealth of Massachusetts, and Superintendent Salem Jail and House of Correction, Respondent.

Misc. Civ. Nos. 74–20–T, 74–13–T.

United States District Court,
D. Massachusetts.

May 31, 1974.

Leonard E. Hardeman, pro se, Anne Hoffman, Henry F. Owens, III, Boston, Mass., for petitioner.

Roger E. Wells, Sheriff of Essex County, John N. Nestor, Lynn, Mass., for respondent.

## MEMORANDUM

TAURO, District Judge.

Petitioner requests that the court issue a writ of habeas corpus[1] alleging that he was convicted of violating the state prisoner-escape statute pursuant to an unconstitutional construction of the law.

Petitioner was serving a sentence for larceny at the Salem Jail and House of Correction which, without considering good time credit, would have ended January 12, 1974. He was granted a furlough from February 26, 1973, 8:00 a.m. to February 26, 1973, 6:00 p.m. Prior to leaving on furlough, he signed a "Furlough Permit Agreement" reciting the conditions placed upon his furlough, although he testified that he did not read the form prior to signing.

The petitioner did not return at the end of the furlough period and was arrested in Florida and returned to Massachusetts on June 27, 1973. On February 4, 1974, he appeared in Essex Superior Court, pleaded guilty to violation of M.G.L. ch. 268 § 16, and was sentenced to six months in the House of Correction. The sentence was to run concurrently with his original sentence for larceny. At the time of his guilty plea, petitioner contended M.G.L. ch. 268 § 16 was unconstitutional.[1a]

Petitioner's substantive assertions are: 1) that the statute is unconstitutionally vague, and 2) the Supreme Judicial Court's interpretation of the statute violates his right not to have laws construed in an *ex post facto* manner. The Commonwealth's position is that the statute gives constitutionally sufficient warning of what conduct is proscribed.

■ Before reaching these substantive issues, the exhaustion-of-available-remedies requirement of the habeas corpus statute must be considered. The petitioner admits that he has not exhausted the appropriate avenues of appeal in the state courts, but argues that recent opinions of the Supreme Judicial Court and the Appeals Court demonstrate that such an appeal would be futile.

The constitutional issues raised now by the petitioner were considered by the Supreme Judicial Court in Commonwealth v. Hughes (Mass., 305 N.E.2d 117, 122 (1973) (Hennessey, J., dissenting), and even more recently were squarely faced and rejected by the Massachusettes Appeals Court in Commonwealth v. Hickson, 306 N.E.2d 862 (1974).[2] In the latter case, application

---

1. 28 U.S.C. § 2254.

1a. The text of M.G.L. ch. 268 § 16 reads as follows:

> A prisoner who escapes or attempts to escape from any penal institution other than the Massachusetts Correctional Institution, Framingham, or from land apurtenant thereto, or from the custody of any officer thereof or while being conveyed to or from any such institution, may be pursued and recaptured and shall be punished by imprisonment in the state prison for not more than ten years or by imprisonment in a jail or house of correction for not more than two and one half years.

2. In *Hickson*, counsel did not argue in his brief that the statute was broadened in an *ex post facto* manner violative of the Due Process Clause. The void-for-vagueness theory was briefed. Its rejection by the Appeals Court and Supreme Judicial Court realistically forecloses the *ex post facto*—due process argument's chances on appeal as they are fraternal legal theories.

for leave to obtain further appellate review was denied by the Supreme Judicial Court (Appendix A).

The court is satisfied that petitioner has no effective state remedy available to him. Two pronouncements of the Commonwealth courts of last resort written the past year make clear that petitioner's constitutional arguments would be rejected. It is both a matter of law and common sense that a habeas corpus petitioner need not himself exhaust state remedies when, as here, the precise issues involved in his petition have been recently considered and determined by a state's highest court. Belbin v. Picard, 454 F.2d 202, 204 (1 Cir. 1972); Walsh v. Picard, 446 F.2d 1209, 1210 n.2 (1 Cir. 1971), cert. denied, 407 U.S. 921, 92 S.Ct. 2465, 32 L.Ed.2d 807 (1972).

■ The statute as applied to Hardeman constitutes his most compelling argument that it is void for vagueness.[3] Still the court is unpersuaded.

The escape statute, when read in the context of a prisoner benefiting from the furlough law, M.G.L. ch. 127 § 90A (Supp. 1973), reasonably informs the prisoner "as to what the State commands or forbids." Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939). M.G.L. ch. 268 § 16 penalizes prisoners who escape (1) "from any penal institution . . . " or (2) "from the custody of any officer thereof . . . ." As was pointed out in *Hughes,* the furlough statute introduced a concept of constructive custody to define the status of a prisoner while on furlough:

The commissioner may extend the limits of the place of confinement of a committed offender at any state correctional facility . . . .

. . . . . .

. . . [A] committed offender shall, during his absence from a correctional facility under this section, be considered as in the custody of the correctional facility and the time of such absence shall be considered as part of the term of sentence.

M.G.L. ch. 127 § 90A (Supp.1973).

The escape statute, when read in light of the constructive custody language of the furlough statute, reasonably informs a prisoner that a violation of his furlough agreement would constitute an escape from custody.[4] See generally, United States v. Spector, 343 U.S. 169, 171, 72 S.Ct. 591, 96 L.Ed. 863 (1952).

The language of M.G.L. ch. 268 § 16 clearly puts a prisoner on reasonable notice that an escape from custody constitutes a crime. The provisions of M.G.L. ch. 127 § 90A make it clear that a furloughed prisoner is, nonetheless, in custody. Petitioner's argument that he was not put on reasonable notice that his trip to Florida would be considered a criminal escape merely because he left the Salem Jail with permission through its front door, as opposed to going over the wall, flies in the face of common sense, as well as traditional concepts of statutory construction.

■ That the legislature, after the events in this case occurred, amended the escape statute[5] to specifically include furlough violators does not lend support to petitioner's theory. The issue is not whether the statute was perfect, but whether it was reasonably capable of

3. Consequently, the court does not reach the question whether the petitioner has standing to attack the facial constitutionality of the escape statute.

4. Justice Hennessey, in his *Hughes* dissent, pointed out that the language of the furlough statute ensured good time credit to a prisoner on furlough. Such an interpretation does not necessarily exclude other purposes for the constructive custody language, including that

furloughed prisoners be covered by the escape statute. See Commonwealth v. Hughes, Mass., 305 N.E.2d 117, 120, 121 (1973).
It is not unreasonable to charge prisoners on furlough with knowledge of the escape statute. Every prisoner has good reason to be aware of the escape statute's terms, and the consequences of any breach of those terms.

5. Mass.St.1973 c. 1062 (November 20, 1973).

putting the petitioner on notice. There is little that has ever been written that could not be rewritten with some improvement.

It should be noted that the petitioner signed a "Furlough Permit Agreement" which, if he read it, clearly put him on notice that at least the Sheriff of Essex County considered a furlough violation an "escape." The fact that he may not have read the furlough agreement is not a matter of consequence. What remains controlling is the fact the operative statutes clearly put the petitioner on notice as to the consequences of a custody violation.

### Ex Post Facto

■ A law violates the *ex post facto* prohibition of the United States Constitution if it "makes an action done before the passing of the law, and which was innocent when done, criminal . . . ." Calder v. Bull, 3 U.S. (3 Dal.) 386, 390, 1 L.Ed. 648 (1798). The prohibition usually extends to legislative action. The petitioner urges that the judicial construction placed upon the escape statute by the Massachusetts state courts also violates the *ex post facto* clause, U.S.Const. art. I, § 9, cl. 3.

In support of his contention he cites Love v. Fitzharris, 311 F.Supp. 702 (N. D.Cal.1970), aff'd, 460 F.2d 382 (9 Cir. 1972), vacated as moot, 409 U.S. 1100, 93 S.Ct. 896, 34 L.Ed.2d 682 (1973). The *Love* case is not on point since it pertains to the applicability of the *ex post facto* clause to administrative action:

> The issue in this case is whether such a change in parole eligibility brought about, not by legislative action but by administrative fiat, is within the *ex post facto* prohibition.

Love v. Fitzharris, 460 F.2d at 384.[6] In Bouie v. City of Columbia, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1963), the Supreme Court made it clear that the due process clause rather than the *ex post facto* prohibition bars a State Supreme Court from "unexpectedly broaden[ing] a [criminal] statute." *Id.* at 353.

*Bouie* was a civil rights case involving two blacks who conducted a sit-in demonstration in a restaurant booth of a South Carolina drugstore. They were asked to leave. They refused, were arrested and were convicted under a criminal trespass statute which had previously been construed and which stated plainly that it did not pertain to the defendants' conduct:

> The pre-existing law gave petitioners no warning whatever that this criminal statute would be construed, despite its clear language and consistent judicial interpretation to the contrary, as incorporating a doctrine found only in civil trespass cases. [footnote omitted].

Id. at 359.

In *Bouie* the Court pointed out two aspects of the South Carolina decision which made it violative of due process, neither of which are present in this case. First, the South Carolina courts' statutory construction flew in the face of the statute's language. Here, the Supreme Judicial Court's statutory construction did no violence to the terms of the law, but merely integrated the meaning of two closely related penal statutes. Such an approach was recently supported by the Supreme Court.

> Although penal laws are to be construed strictly, they "ought not to be construed so strictly as to defeat the obvious intention of the legislature." [citations omitted].
>
> .   .   .   .   .   .
>
> [W]e will not blindly incant the rule of lenity to "destroy the spirit and force of the law which the legis-

---

6. Factually, Love v. Fitzharris concerned an administrative ruling which increased the punishment of a prisoner already sentenced. The petitioner does not contend here that administrative officials increased the punishment for his previously committed furlough violation.

lature intended to [and did] enact." [citations omitted].

Huddleston v. United States, 415 U.S. 814, 94 S.Ct. 1262, 1272, 39 L.Ed.2d 782, 42 U.S.L.W. 4467, 4472, 4473 (1974).

Second, the South Carolina Court upset settled case law in order to justify its new position. In *Hughes*, the Supreme Judicial Court construed the application of the escape statute to furlough violators for the first time. Petitioner, therefore, could not have been misled by prior precedents.

Accordingly, the petition is hereby denied.

## APPENDIX A

## COMMONWEALTH OF MASSACHUSETTS

SUPREME JUDICIAL COURT FOR THE COMMONWEALTH,
AT BOSTON,                              March 26, 1974.

### ORDER

IN THE CASE NO. 11M, 116M and 118M

pending in the _____ Appeals _____

Court for the _____ Commonwealth _____ No. _____

It it hereby ORDERED, that the following Application for Further Appellate Review be Denied:

A.C. 73–415   COMMONWEALTH v. ROBERT HICKSON, JR.

A.C. 73–62    JAMES L. DALLAS v. COMMISSIONER OF PUBLIC HEALTH

A.C. 73–307   LEONARD A. PIERCE v. BOARD OF APPEALS OF CARVER ET AL.

BY THE COURT,

William M. Cloran, Asst. CLERK.

March 21, 1974