**UNITED STATES of America**

v.

**Sherman Shelby SHAW.**

**UNITED STATES of America**

v.

**George M. SNELLINGS III.**

**Magistrate Nos. 78–5028 M–01, 78–5081 M–01, 78–5030 M–01 and 78–5082 M–01.**

**CR–79–30009–01, CR–79–30009–02.**

United States District Court, W. D. Louisiana, Monroe Division.

March 20, 1979.

J. Ransdell Keene, U. S. Atty., Ansel Martin Stroud, III, Asst. U. S. Atty., Shreveport, La., for United States.

Charles C. Trascher, III, Snellings, Breard, Sartor, Inabnett & Trascher, Monroe, La., for Sherman Shelby Shaw and George M. Snellings III.

STAGG, District Judge.

## MEMORANDUM RULING

This prosecution for violation of the federal migratory bird laws, 16 U.S.C. § 703, *et seq.*, and the regulations promulgated thereunder, comes before this court after rather confused proceedings before the Magistrates in the Western Districts of Louisiana and Texas. Although one of the defendants has characterized the case as a "tempest in a teapot,"[1] it presents a novel question of law with serious implications for the prosecution of petty offenses. The following are the facts established by the record and by the evidence received at the May 16, 1978 hearing.

### I.

On December 17, 1977, defendants Sherman Shelby Shaw and George M. Snellings III, residents of Monroe, Louisiana, were hunting ducks on a lease north of Monroe near the Arkansas border. They were accompanied by two out-of-town guests from Odessa, Texas, who are not currently before the court. During the course of the day,

the four hunters allegedly jointly exceeded by twenty-nine ducks the "daily bag limit" established by the federal wildlife regulations. *See* 50 C.F.R. §§ 20.24, 20.105(d).

The United States Attorney commenced this action on February 16, 1978 by a series of Informations charging that each defendant "unlawfully did jointly take, in one calendar day, more than the daily bag limit of ducks." The Information against Shaw charged in a second count that he "did unlawfully transport migratory game birds that had been taken contrary to the provisions of 50 C.F.R. § 20.24. . . ." All defendants were arraigned on February 24, 1978, when they signed a form granting consent to be tried by a Magistrate and pleaded not guilty.

At the arraignment, counsel for defendants indicated that he planned to file a motion to transfer the proceedings to the Western District of Texas and was granted ten days in which to file the motion. When defense counsel discussed the motion with the Government's counsel, he learned, to his apparent surprise, that the Government would oppose the transfer. At that point defense counsel re-examined Rule 6 of the Federal Rules of Procedure for the Trial of Minor Offenses Before United States Magistrates (Magistrates' Rules) and concluded that neither the consent of the Government nor the approval of the Magistrate was needed to transfer the proceedings. Accordingly, he advised the defendants simply to appear before a Magistrate in the Western District of Texas and enter a plea of guilty without notice to the Louisiana Magistrate or United States Attorney.

The motive underlying the decision of Shaw and Snellings to transfer the proceeding to Texas is disputed. The Government contends that defendants hoped to obtain lighter sentences because western Texas has less interest in enforcing migratory bird laws.[2] Shaw and Snellings maintain that

---

1. Letter to court from defendant George M. Snellings III, April 19, 1978 at p. 4 (filed in the record at the May 16, 1978 hearing).

2. The transcript of the April 14, 1978 sentencing hearing does reflect that the Texas Magis-

they simply wanted the four hunting partners to be treated uniformly, and that to spare their Texas codefendants (an attorney and a neurosurgeon) the expense of returning to Louisiana, they volunteered to travel to Texas. Snellings, however, has stated that he believes the sentences customarily imposed in Louisiana for migratory bird offenses, particularly a sentence imposed upon Shaw by the Louisiana Magistrate in a similar case several years earlier, are unduly harsh, lending credence to the Government's interpretation of the events.[3]

In any event, defendants Shaw and Snellings met the other two defendants in the Midland-Odessa Division of the Western District of Texas (the latters' domicile) on March 15, 1978, and appeared before the United States Magistrate. A second form consenting to be tried by a Magistrate was executed by each defendant, along with a waiver of the right to a preliminary hearing and to appointed counsel, and a "motion to transfer." Although the motion to transfer filed on that date recites that it was being filed simply "for the purpose of advising his Honor that the Defendant wishes to plead guilty", it appears that the Magistrate changed the accompanying Order to reflect that defendants actually had pleaded guilty on that date. The Order further stated that defendants would be notified of the date to be set for their sentencing, and directed the Magistrate of the Western District of Louisiana to transmit a certified copy of the file. Both the Order and the motion to transfer were sent to the United States Magistrate in Louisiana.

Defendant's motion to transfer was expressly addressed to the Magistrate in Texas; however, the caption bore the name of this court and the prayer was phrased in such a manner that it appeared to be addressed to the Magistrate in Louisiana,[4] particularly when considered in light of defense counsel's statement at the arraignment that he intended to file such a motion in this court. In any event, on March 27, 1978, the United States Attorney filed with the Magistrate in Louisiana an opposition to the motion to transfer. The opposition was limited to the actions against defendants Shaw and Snellings.

Shortly thereafter, on April 3, 1978, the Magistrate in Louisiana issued a Ruling ordering that the files of the two Texas defendants be transmitted to the Magistrate in Texas, but that jurisdiction over the proceedings against Shaw and Snellings be maintained in this District and set for trial on the next Monroe docket. Despite this Ruling, the Magistrate in Texas issued an Order on April 11, 1978 setting the sentencing of Shaw and Snellings for April 14, 1978.[5] At the sentencing, Snellings and the two Texas defendants were each fined $150, which they have since paid. It is not clear from the record whether Shaw has yet been sentenced.[6]

On April 17, 1978, Shaw and Snellings filed a motion addressed to this court to

---

trate was unfamiliar with the migratory bird laws and surprised at the severity with which they were enforced in Louisiana.

**3.** Letter to Court, *supra* note 1, at p. 4.

**4.** "Therefore, the Defendant would respectfully request the Court to transfer this case to the United States Magistrate, Don E. Williams, P. O. Box 1774, Midland, Texas 79701, for disposition pursuant to the statement of the Defendant herein that he wishes to plead guilty or *nolo contendere.*"

**5.** Although the Order recited that the defendant's "presence shall be required" at the hearing, the closing sentence provided: "Should the defendant fail to appear in open court on that date and at such time, the proceedings in the above captioned cause will be re-transferred to

the United States District Court for the Western District of Louisiana, Monroe Division."

**6.** The record contains a copy of a form entitled "Record of Proceedings in Criminal Cases" (Form A.O. 100) signed by the Texas Magistrate and dated April 14, 1978, which states that Shaw was "fined $500 and 5 days probated for 30 days." However, the Clerk's Offices in the appropriate divisions of both Districts have no record of any fine having been paid by Shaw. Moreover, defendants imply that Shaw was not sentenced on April 14, both in the posthearing brief (June 6, 1978 Memorandum at pp. 13-14) and in the April 19, 1978 letter to the court from defendant Snellings, at page 3 (filed in the record at the May 16, 1978 hearing).

vacate the Louisiana Magistrate's Ruling maintaining his jurisdiction over them. At the same time, defendants filed affidavits claiming the Magistrate was personally biased against them, and seeking his recusal, apparently under 28 U.S.C. § 144.

Four days later, the Government filed second Informations against both Shaw and Snellings charging that each "unlawfully did jointly possess more than the daily bag limit of ducks." Defendants filed further affidavits to have the Magistrate recused from hearing these new charges as well. On May 15, defendants moved to dismiss the second Informations on grounds of former jeopardy, collateral estoppel and *res judicata*. Following the May 16 hearing, all parties submitted briefs on the legal issues involved.

## II.

The central question in this case is the interpretation of Rule 6(b) of the Magistrates' Rules:

*Rule 6. Transfer of cases*

.    .    .    .    .

*(b) Petty offenses.* A defendant charged with a petty offense who is arrested, held, or present in a district other than that in which an information, complaint, citation, or violation notice is pending against him may state in writing before a magistrate that he wishes to plead guilty or *nolo contendere,* to waive trial in the district in which the proceeding against him is pending, and to *consent to disposition of the case in the district in which he was arrested, is held, or is present.* The magistrate shall thereupon transmit the statement to the magistrate before whom the proceeding is pending. Upon receipt of the defendant's statement, the magistrate before whom the proceeding is pending shall transmit

the papers, or certified copies thereof, to the clerk of the district court for the district in which the defendant was arrested, is held, or is present for reference to a magistrate and the proceeding shall continue in that district.

.    .    .    .    .

Federal Rules of Procedure for the Trial of Minor Offenses Before United States Magistrates, 400 U.S. 1029, 1040 (1971). (Emphasis added.) Defendants contend that Rule 6(b) allows a person charged with a petty offense to travel to any district in the United States and, since he is then "present" in that district, to enter a plea of guilty and be sentenced by the Magistrate in that district. The Government, on the other hand, argues that "present" as used in Rule 6(b) cannot be interpreted in a strictly literal fashion. Rather, presence must be limited to confinement or residence in the district.

▮ At the outset, it must be noted that Rule 6 is not a penal statute, it is simply a procedural rule. Nor is it a rule that one might justifiably rely upon in planning the activity upon which criminal liability is premised. Hence, the Rule should be interpreted in the manner most reasonably calculated to achieve its purpose, even if one of its terms is thereby given an other-than-literal meaning.[7]

Unlike other rules prescribed by the Supreme Court pursuant to the Rules Enabling Acts,[8] the Magistrates' Rules became effective without prior submission to Congress. In 18 U.S.C. § 3402, the Supreme Court is granted absolute authority to "prescribe rules of procedure and practice for the trial of cases before magistrates." Thus, there is no legislative history to guide the courts in applying the rules. Nor have the notes of the Advisory Committee been published, though such a committee clearly

---

7. The doctrine of vagueness is based on the right to fair notice inherent in the Due Process Clause. *Bouie v. City of Columbia,* 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). Only laws that *impose some penalty,* involving loss of liberty or property, for failure to conform one's conduct to their commands are subject to

the doctrine. Application of the *Ex Post Facto* Clause, which covers judicial "revision" of criminal statutes, is subject to the same limitation. *Id.* at 353–54, 84 S.Ct. at 1697.

8. *E. g.,* 28 U.S.C. §§ 2071–76; 18 U.S.C. § 3771.

assisted in drafting the rules.[9] In view of the utter absence of any published history of the origin of the rules, one must turn to the Court's treatment of the issues in other contexts to divine the intent of Rule 6(b).

As originally promulgated in 1969, the Magistrates' Rules contained no provision for transfer of a prosecution to another district for entry of a guilty plea. 395 U.S. 989 (1969). By amendment effective January 27, 1971, the Court prescribed Rule 6 as it now reads. On that date, the analogous Federal Rule of Criminal Procedure, Rule 20, provided that a defendant "arrested or held" in a district other than that in which the charges were pending could enter a plea of guilty in the former district, "subject to the approval of the United States attorney for each district." 383 U.S. 1087, 1101 (1966).

Rule 6(b) was thus an innovation both in the addition of "present" to "arrested or held", and in the omission of the requirement of consent by the United States Attorneys. The first of these changes was incorporated into Fed.R.Crim.P. 20 by the Supreme Court some three years later.[10] Allowing persons simply present in a district, not under arrest or confinement, to transfer the proceedings to that district was designed to obviate the need for the cumbersome process then required. Before the amendment, in order to satisfy the Rule's requirement that the defendant be "arrested or held," a bench warrant had to be issued for the arrest of an out-of-district defendant who was not in confinement, even though he was willing to appear voluntarily.[11] After the amendment, the arrest warrant became unnecessary. Recognizing the amendment's potential for abuse by defendants, the Advisory Committee stated: "The danger of 'forum shopping' can be controlled by the requirement that both United States Attorneys agree to the handling of the case under provisions of this rule." [12]

It is well recognized that a person is free to select, from among the alternatives legitimately available, the forum he believes is most favorable to him. However, Congress and the courts have attempted to minimize the availability of such choices, especially where one forum has a much more significant interest in the proceedings than do the others. *See, e. g., Erie R. R. Co. v. Tompkins,* 304 U.S. 64, 75 n. 9, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); 14 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3638; *cf.* 28 U.S.C. § 1359. This court cannot divine the reason for which the consent requirement was omitted from Rule 6(b). It appears likely that the participation of the United States Attorneys was deleted in order to conform the transfer procedure with the less formal, streamlined approach which characterizes all other phases of the prosecution of petty offenses.[13] But there is no reason to believe, and considerable reason not to believe, that the Rule was intended to allow

---

9. *See* Justice Black's dissent from the promulgation, 400 U.S. 1029, 1036 (1971); 8B J. Moore, *Moore's Federal Practice—Criminal Rules* § 0.01(3) at App–12 (2d ed.).

10. 416 U.S. 1001, 1013 (1974), approved by Congress as amended, P.L. 94–64, 89 Stat. 370 (1975). Congress did not alter the amendment proposed by the Supreme Court with respect to subdivision (a) of Rule 20. The Advisory Committee Note accompanying the 1974 proposed amendment to Rule 20 acknowledges that Magistrates' Rule 6(b) is the source of the amendment. 62 F.R.D. 271, 319 (1974).

11. Advisory Committee Notes, 62 F.R.D. 271, 319 (1974).

12. *Id.*

13. *Compare* Magistrates' Rule 2 (governing minor offenses) *with* Magistrates' Rule 3 (governing petty offenses). This inference is supported by the fact that Rule 6(a) incorporates all of the provisions of Fed.R.Crim.P. 20 into transfer of minor offense prosecutions, while Rule 6(b) does not.

Petty offense prosecutions are so informal, and may be commenced by the mere filing of a citation or violation notice, that a guilty plea (the only situation in which the transfer provisions of Rule 6(b) can come into play) can be taken without the participation of the United States Attorney.

unrestricted forum shopping of the type engaged in by Shaw and Snellings.[14]

█ Defendants seek further to support their motion to vacate on the theory that the court should not undo what has already been done. Their pleas of guilty have already been accepted in Texas, and at least one of them has been sentenced. However, defendants were aware of the opposition to the transfer even before they went to Texas. Under Rule 6(b) their pleas should not have been accepted until the files had been transferred. Nonetheless, they entered pleas of guilty on their first appearance before the Texas Magistrate. Before they returned to Texas for sentencing, they had received the Louisiana Magistrate's Ruling barring further proceedings in Texas. They chose to ignore this Ruling, claiming that the April 11, 1978 Order of the Texas Magistrate compelled their appearance for sentencing. However, that Order simply stated that if they did not appear for sentencing the proceedings would be transferred back to Louisiana.[15] Defendants may not by the haste of their actions escape the more ponderous review of the courts.

### III.

█ The defendants in this action have taken a device designed to expedite the trial of petty offenses and to spare the Government or the defendant the expense of returning the defendant to the place where the crime was committed,[16] and have used it to allow a defendant willing to incur the expense to travel to the district of his choice for disposition of the charges against him. Such a result will not be countenanced, especially where it is brought about by a desire to obtain a lighter sentence.

█ Accordingly, the court having concluded that Rule 6(b) of the Federal Rules of Procedure for the Trial of Minor Offenses Before United States Magistrates does not allow a defendant to transfer the proceedings against him to a district other than the one in which the charges were filed by traveling to another district solely for the purpose of entering a plea of guilty, the proceedings against defendants Shaw and Snellings in the Western District of Texas will be VACATED. Defendants will be allowed to plead anew to the charges.

In view of defendants' motion to recuse the Magistrate, all further proceedings will be conducted before this court. The motion by defendants to dismiss the second set of Informations charging possession of an excessive number of ducks will be addressed in a separate Ruling.

---

14. In their June 6, 1978 Memorandum, at page 6, defendants argue that the legislative history of the Federal Magistrates Act, 28 U.S.C. §§ 631–39, shows that Congress condoned forum shopping. This Act was passed years before the Magistrates' Rules had even been drafted and the debates bear no relation to these Rules, the intent of which lies in the minds of the Supreme Court and the Judicial Conference Advisory Committee and not of Congress. Moreover, the cited passages refer to the defendants' power to choose between a Magistrate and a District Judge, and not between different districts.

15. *Supra,* note 5.

16. The Notes of the Advisory Committee accompanying Fed.R.Crim.P. 20 as it was originally proposed by the Supreme Court in 1944 state that the Rule is intended to relieve the defendant of "whatever hardship may be involved in a removal to the place where the prosecution is pending." The Advisory Committee Note accompanying the amendment proposed in 1974 likewise states as its principal advantage that: "It may be more convenient to have him plead in the district in which he is present *rather than having him or the govern*ment incur the expense of his *return* to the district in which the charge is pending." (Emphasis added.) There is no reason to believe that the Supreme Court and its Advisory Committee had a different goal in mind when they proposed Magistrates' Rule 6(b).