COMMONWEALTH of Kentucky, Appellant,

v.

Lucian Hunter HAY, Adele Hay, Appellees.

No. 95–CA–0939–MR.

Court of Appeals of Kentucky.

Feb. 27, 1998.

Rehearing Denied Sept. 4, 1998.

Discretionary Review Denied by Supreme Court April 14, 1999.

C. Lloyd Vest II, Special Assistant Attorney General, Joseph P. Gutmann, Special Assistant Attorney General, Louisville, for Appellants.

Paul J. Neel, Jr., Appellate Public Advocate, Louisville, for Appellee.

Before ABRAMSON, COMBS and GARDNER, JJ.

## OPINION

ABRAMSON, Judge.

The Commonwealth appeals from a pretrial order dismissing three counts of an indictment, based on the trial judge's conclusion that the Commonwealth would be unable to prove an essential element of the offenses at trial. The three counts charged Appellees Lucian Hunter Hay and Adele Hay jointly with theft by failure to make required disposition of property over $300 during 1992, 1993 and 1994. Having reviewed the arguments of the parties and the applicable law, we reverse and remand.

The three counts at issue in this appeal originally were Counts XX, XXI and XXII of Indictment 94–CR–00186, returned by the Franklin County Grand Jury in November 1994. In January 1995, a special judge appointed to preside over the case severed the three counts and transferred them to Indictment 94–CR–00178, which had been returned against the Hays in October 1994.

In a bill of particulars, the Commonwealth stated that while Lucian Hunter Hay was the elected Franklin County Jailer and his wife, Adele Hay, was a Franklin County jail employee, he had four vending machines installed in the Franklin County Jail and used county employees to stock and tend the machines during working hours. Further, according to the bill of particulars, the Hays received all profits from the machines and they neither turned over any of the monies nor made any accounting of those monies to Franklin Fiscal Court.

Each party responded to discovery requests, with the Commonwealth providing 1,104 pages of documents and fourteen audio tapes to the Hays, and the Hays producing 2,107 pages of reciprocal discovery. One of the documents furnished to the Hays was an opinion letter from the Director of County Auditors, Office of the Auditor of Public Accounts, written in response to questions posed by the prosecutors about the ownership of profits or revenue derived from vending machines at the Franklin County Correctional Center.

The Hays filed a motion to dismiss the three counts, claiming that the theft charges were "conjured up" and that they did not have "fair warning" that their conduct in retaining the monies was criminal. They asserted that, because prosecution officials "had to obtain an opinion from the Office of the Auditor of Public Accounts in order to

determine whether profits from vending machines located at the county jail ... are the property of and should be reported to the fiscal court," no one (including them) could know that their failure to report the profits was criminal in nature. The Hays further argued that because they could not be expected to know about the criminal nature of their failure to report the profits to the Franklin Fiscal Court, they lacked the "intentional" and "knowing" culpable mental states necessary for criminal liability under KRS 514.070. The Hays attached several documents to their motion, including copies of various Attorney General opinions.

In its response to the motion to dismiss, the Commonwealth argued that (1) the Hays were relying upon an ignorance of the law defense; (2) under KRS 514.070[1] (Theft by failure to make required disposition of property), as government employees they were presumed to know about their legal obligation relevant to that offense and to have dealt with the profits from the vending machines as their own when they failed to account to Franklin Fiscal Court for the funds from the machines; and (3) Sections 173 and 246 of the Kentucky Constitution were applicable because the Hays had profited from their positions as county officers and had received more remuneration than the amount fixed by law.

At a hearing on March 10, 1995, a second special judge heard the parties' arguments on the motion to dismiss. In addition to the arguments from its written response, the Commonwealth objected that a trial court cannot "grant a summary judgment" prior to trial. One week later, the judge dismissed the three counts "based upon the authorities cited by the defendants in reliance thereon." The Commonwealth appeals from that ruling.

On appeal, the Commonwealth argues two points. First, it contends that the trial court lacked the authority to summarily dismiss the three counts prior to trial. Second, it declares that the trial court's ruling was legally erroneous, because the Hays were presumed to know of their statutory obligations under KRS 514.070 and there has been no showing that an official statement of law was the basis for the Hays' mistaken belief as to the nature of their conduct.

When an indictment is valid on its face in conformity with the requirements of RCr 6.10, at trial the Commonwealth has the burden of proving all the elements of the crime beyond a reasonable doubt. KRS 500.070(1). *Cf. Commonwealth v. Simmons*, Ky.App., 753 S.W.2d 872 (1988) (indictment was facially defective because it did not include an essential element of the crime with which the defendant was charged; trial court properly dismissed the indictment). We note initially that the Hays' motion to dismiss did not dispute the facial validity of the indictment. Rather, it challenged the three charges as violative of due process because the Hays lacked "fair warning" about the legal significance of their conduct.

In *Commonwealth v. Hayden*, Ky., 489 S.W.2d 513, 516 (1972), the Kentucky Court of Appeals, then the state's highest court, stated the law in Kentucky concerning the dismissal of indictments: "[t]here is no au-

---

1.  KRS 514.070 provides in relevant part:
    (1) A person is guilty of theft by failure to make required disposition of property received when:
    (a) He obtains property upon agreement or subject to a known legal obligation to make specified payment or other disposition whether from such property or its proceeds or from his own property to be reserved in equivalent amount; and
    (b) He intentionally deals with the property as his own and fails to make the required payment or disposition.
    (2) The provisions of subsection (1) apply notwithstanding that it may be impossible to iden-

tify particular property as belonging to the victim at the time of the actor's failure to make the required payment or disposition.
    (3) An officer or employee of the government or of a financial institution is presumed:
    (a) To know any legal obligation relevant to his criminal liability under this section; and
    (b) To have dealt with the property as his own when:
    1. He fails to account or pay upon lawful demand; or
    2. An audit reveals a shortage or falsification of accounts.

thority for the use of summary judgment procedure in a criminal prosecution, and it is our opinion that the evidence could not properly be considered on the motions to dismiss." More recently, this Court stated in *Commonwealth v. Hamilton*, Ky.App., 905 S.W.2d 83, 84 (1995), that prior to trial a trial court cannot weigh the evidence to resolve whether the Commonwealth can or will meet its burden of proof.

■ When the trial court here dismissed the three theft counts, it based its decision "upon the authorities cited by the defendants in reliance thereon." This statement can be read to encompass all of the grounds relied upon by the Hays. In their motion to dismiss and accompanying memorandum of authorities, the Hays referred to some of the discovery they had obtained from the Commonwealth, principally the opinion letter from the Director of County Auditors, Office of the Auditor of Public Accounts, which concluded that "vending machine monies would be under the control of [Franklin] Fiscal Court." If the trial court considered the evidence in reaching its decision, the court was in effect applying a summary judgment standard. Because a trial court lacks the authority to use a summary judgment procedure in a criminal case, dismissal of the three counts of the indictment on that basis would be improper. *Commonwealth v. Hayden*, 489 S.W.2d at 516.

The Hays also raise a constitutional challenge to the three counts of the indictment. They contend that the charges deprive them of due process because they did not have fair warning that their alleged retention of the monies from the operation of the vending machines was criminal in nature. They insist that, if the indictments based upon that conduct are not dismissed, they will be subjected to an ex post facto law achieved by judicial interpretation. If this constitutional challenge to the indictment is valid, the trial court's dismissal of the three counts could be sustained on that purely legal basis. *See, e.g. Commonwealth v. Foley*, Ky., 798 S.W.2d 947 (1990) (affirming dismissal of indictment on

grounds the statute prohibiting bribery in connection with elections was unconstitutional). Having reviewed the applicable law, this Court concludes that the constitutional doctrine invoked by the Hays is not applicable to this case.

■ "The Ex Post Facto Clause is a limitation upon the powers of the Legislature ... and does not of its own force apply to the Judicial Branch of government." *Marks v. United States*, 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977). However, "fair warning" is a part of due process which restricts the ability of courts to retroactively apply new legal principles. *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). In *Bouie* the United States Supreme Court held that "an unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law such as ... the Constitution forbids." 378 U.S. at 353, 84 S.Ct. at 1702, 12 L.Ed.2d at 899. In other words, a court cannot construe a statute in a manner which will result in the imposition of punishment for an act which was not punishable at the time it was committed.

■ Significantly, *Bouie* prohibits the retroactive application of a judicial construction of a criminal statute only where it produces an unforeseeable change in the law. The Commonwealth's interpretation of the applicability of KRS 514.070 in this case, bolstered by the letter from the Director of County Audits, did not constitute an unforeseeable change in the law as proscribed in *Bouie*. This Court thus rejects the Hays' claim that they are being charged based on a construction of the law that they in no way could have anticipated.

KRS 514.070 clearly was enacted prior to the Hays' conduct. The statute criminalizes the failure to make required disposition of property and specifically provides that government officers and employees are presumed to know their legal obligations under the statute. With respect to jailers specifically, there is longstanding legal precedent

which stems from the constitutional prohibition on a public official personally benefiting from his or her office beyond receipt of the authorized compensation. Some ten years before the Hays allegedly engaged in the conduct at issue, this Court held in *Buchignani v. Lexington–Urban County Government,* Ky.App., 632 S.W.2d 465 (1982), that a jailer cannot profit from operating a commissary on jail property. The *Buchignani* Court specifically noted that Section 173 of the Kentucky Constitution prohibits a public official from "receiving, directly or indirectly ... profit or perquisites arising from the use or loan of public funds." This section has been interpreted to include the "fruits of public money" such as using public labor or facilities. 632 S.W.2d at 467. More particularly, at least since the ancient case of *Miller v. Porter,* 47 Ky. 282, 282–283 (1847–8), our courts have held that:

> ... the jail is public property provided at the public expense for public uses, which are defined by law, and that the jailer is the officer intrusted by law with the immediate possession and control of this public property for those public uses for which it was erected, and not to be used at his discretion for his own private convenience or emolument.

632 S.W.2d at 467. As the *Buchignani* Court noted, all of the relevant judicial precedent stems from the fundamental common law principle that "as a public office is a public trust, the holder of that office may not directly or indirectly use it for personal profit or gain." *Id.* Given the constitutional prohibition on public officials personally profiting from their positions and the foregoing cases, it is even more apparent that allowing the Hays to be tried on the three charges does not represent a construction of KRS 514.070 that was "unexpected and indefensible by reference to the law which had been expressed prior to the conduct at issue." *Bouie,* 378 U.S. at 354, 84 S.Ct. at 1703, 12 L.Ed.2d at 900, quoting J. Hall, General Principles of Criminal Law 61 (2d ed.1960).

The judgment dismissing Counts 5, 6 and 7 of Indictment 94–CR–000178 is reversed, and this case is remanded for further proceedings consistent with this opinion.

All concur.