**Michigan Supreme Court**
**Lansing, Michigan**

| Opinion | Chief Justice:<br>Clifford W. Taylor | Justices:<br>Michael F. Cavanagh<br>Elizabeth A. Weaver<br>Marilyn Kelly<br>Maura D. Corrigan<br>Robert P. Young, Jr.<br>Stephen J. Markman |
|---|---|---|

FILED MAY 31, 2006

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                            No. 128724

MACARIO G. YAMAT, JR.,

    Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

PER CURIAM.

This case concerns the appropriate interpretation of the definition of "operate" in the Michigan Vehicle Code.[1] The Court of Appeals panel below interpreted the statute to essentially require *exclusive* control of a motor vehicle, and upheld the circuit court's affirmance of the district court's decision to quash the felonious driving charge against defendant. We hold that the plain language of the statute requires only "actual physical control," not exclusive control of a vehicle. Because the prosecutor has shown probable cause that defendant was in

---

[1] MCL 257.1 *et seq.*

actual physical control of the vehicle at the time of the incident, we reverse the judgment of the Court of Appeals and remand for trial.

Facts and Procedural History

For purposes of the preliminary examination, the parties stipulated to the following facts: Defendant was a passenger in the vehicle his girlfriend was driving. As she drove, the couple argued. During the argument, defendant grabbed the steering wheel and turned it. When the defendant wrenched the steering wheel, the vehicle veered off the road, struck a jogger and caused the jogger severe injuries.

The prosecutor charged defendant with one count of felonious driving.[2] However, the district court refused to bind defendant over for trial after the preliminary examination because it concluded that the prosecution had not established that the statute proscribed defendant's conduct. The circuit court affirmed the district court's decision because defendant did not have *complete control* of the vehicle's movement. The Court of Appeals affirmed in a published opinion per curiam,[3] holding that defendant was merely interfering with his girlfriend's operation of the vehicle, but was not operating the vehicle himself. The prosecutor sought leave to appeal, and this Court scheduled and heard oral

---

[2] MCL 257.626c.

[3] *People v Yamat*, 265 Mich App 555; 697 NW2d 157 (2005).

2

arguments on whether to grant the application.[4]  In lieu of granting leave to appeal,

we reverse the judgment of the Court of Appeals and remand for trial.[5]

Standard of Review

This Court reviews questions of statutory interpretation *de novo*.[6]  In order

to bind a defendant over for trial, the prosecutor must establish probable cause,

which requires a quantum of evidence "'sufficient to cause a person of ordinary

prudence and caution to conscientiously entertain a reasonable belief'"of the

accused's guilt on each element of the crime charged.[7] A district court's decision

declining  to bind a defendant over is reviewed for an abuse of discretion.[8]

Analysis

The felonious driving provision of the Michigan Vehicle Code provides:

> A person who operates a vehicle upon a highway or other
> place open to the general public or generally accessible to motor
> vehicles, including an area designated for the parking of vehicles,
> carelessly and heedlessly in willful and wanton disregard of the
> rights or safety of others, or without due caution and circumspection
> and at a speed or in a manner that endangers or is likely to endanger
> any person or property resulting in a serious impairment of a body
> function of a person, but does not cause death, is guilty of felonious

---

[4] 474 Mich 859 (2005).

[5] MCR 7.302(G)(1).

[6] *People v Jones*, 467 Mich 301, 304; 651 NW2d 906 (2002).

[7] *People v Yost*, 468 Mich 122, 126; 659 NW2d 604 (2003), quoting *People v Justice (After Remand)*, 454 Mich 334, 344; 562 NW2d 652(1997).

[8] *People v Goecke*, 457 Mich 442, 463; 579 NW2d 868 (1998).

driving punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.[9]

The issue in this case is whether defendant was "operating" the vehicle within the meaning of the statute. To ascertain the meaning of a statutory term, this Court construes the term reasonably, according to its plain and ordinary meaning.[10] The Michigan Vehicle Code specifically defines "operate" as "being in actual physical control of a vehicle regardless of whether or not the person is licensed under this act as an operator or chauffeur."[11] Similarly, the code defines "operator" as "every person, other than a chauffeur, who is in actual physical control of a motor vehicle upon a highway."[12] The Court of Appeals accurately quoted the relevant statutory definitions and utilized a dictionary definition in order to ascertain the common meaning of "control." The panel held that "control" "means 'power or authority to guide or manage.'"[13] We agree that this is an appropriate definition of the statutory term "control." However, the panel did not correctly apply the common meaning of the statutory terms to the facts in this

---

[9] MCL 257.626c.

[10] *Veenstra v Washtenaw Country Club*, 466 Mich 155, 160; 645 NW2d 643 (2002); MCL 8.3a.

[11] MCL 257.35a.

[12] MCL 257.36. See also MCL 257.13, which provides, "'Driver' means every person who drives or is in actual physical control of a vehicle."

[13] *Yamat* at 557, quoting *Webster's New Collegiate Dictionary* (1980).

4

case. Instead, the panel concluded that "[a]lthough defendant's act caused the vehicle to veer off the road, defendant did not have the actual physical control of the vehicle, i.e., the power or authority to guide or manage the vehicle."[14] On the contrary, we hold that causing the vehicle to change direction and "veer off the road" squarely meets the statutory requirement of actual physical control, which is understood to mean the "power . . . to guide" the vehicle.[15]

Compounding its erroneous application of the common understanding of the statutory terms at issue, the Court of Appeals panel looked beyond the appropriate defined meaning of "operate" to examine how that term had been interpreted in a case involving an insurance contract. The Court of Appeals panel cited *Farm Bureau Gen Ins Co v Riddering*[16] to buttress its conclusion that "actual physical control" of a vehicle requires control over "all functions necessary to make the vehicle operate."[17] In *Riddering*, a woman grabbed the steering wheel of the car in which she was riding, causing the car to collide with a tree. The other

---

[14] *Yamat* at 557.

[15] While "control" is the critical component of the statutory definition, the definition also includes the words "actual," which means "existing in act, fact, or reality; real," *Random House Webster's College Dictionary* (1997), p 14, and "physical," which means "of or pertaining to that which is material," *Id*. at 983. These definitions lend further support to the conclusion that defendant's act of grabbing the steering wheel and wrenching it conform to the statutory definition of "operate."

[16] 172 Mich App 696; 432 NW2d 404 (1988).

[17] *Yamat* at 558.

passengers in the car sustained severe injuries and filed an action against her. The woman's homeowner's insurance provider refused to defend the lawsuit because the policy specifically excluded coverage for liability arising out of the "operation" of a vehicle. The *Riddering* panel held that the insurer must provide coverage, reasoning that "[o]peration includes *control over all the parts* that allow the vehicle to move, not just the steering function."[18] Therefore, the panel concluded that the woman was not "operating" the vehicle for purposes of the insurance policy.

The Court of Appeals panel below found *Riddering* "analogous" and held that a "passenger who grabbed and turned the steering wheel without permission was *interfering* with the operation of the vehicle, not operating it."[19] The Court of Appeals panel erred in relying on *Riddering* because *Riddering* is entirely inapposite for a number of reasons.[20] First, basic principles of statutory construction require that courts construe statutory terms according to their plain or

---

[18] *Riddering* at 703 (emphasis added).

[19] *Yamat* at 558, citing *Riddering* at 703.

[20] Unlike the dissent, we are hard-pressed to hold "that the law laid down in *Riddering* would affect this defendant's understanding of what constitutes a crime under the circumstances of this case." *Post* at 9. Surely, it is one of the stranger ideas the dissent has offered to suggest that, in the heat of an argument with his girlfriend, defendant wrenched the steering wheel of a moving vehicle in "reliance" on a Court of Appeals decision construing an insurance contract that he was not "operating" the vehicle within the meaning of the Michigan Vehicle Code.

6

common meanings.[21] As noted, the Michigan Vehicle Code defines "operate" as "actual physical control." Because the insurance policy did not use that definition, the *Riddering* panel never discussed the plain or common meaning of "actual physical control." As such, the *Riddering* panel's interpretation of the undefined word "operate" in the insurance contract is not pertinent to an interpretation of the *statutorily defined* term "operate."

Second, the *Riddering* panel arrived at its conclusion that the contract term "operate" meant "complete control" of the vehicle because, misapplying the *contra proferentem* principle for contract interpretation,[22] they construed the term "narrowly" and against the insurance company. The *Riddering* panel erred in resorting to this principle without first concluding that the term "operate" in the contract was ambiguous.[23] Regardless of the proper application of specific rules of construction applicable to contracts, when construing statutes, our obligation is to construe the statutory term reasonably, according to its plain and ordinary meaning.[24]

---

[21] MCL 8.3a; *Nastal v Henderson & Assoc Investigations, Inc*, 471 Mich 712, 720; 691 NW2d 1 (2005).

[22] The *contra proferentem* principle is "[u]sed in connection with the construction of written documents to the effect that an ambiguous provision is construed most strongly against the person who selected the language." Black's Law Dictionary (5th ed), p 296.

[23] *Id.*

[24] *Sotelo v Grant Twp*, 470 Mich 95, 100; 680 NW2d 381 (2004).

7

Where, as here, the statutory terms are not ambiguous and are susceptible to a plain reading, in construing the statutory term "operate," there is no principled basis for resorting to an inapposite insurance case as an aid to construction as suggested by the panel below and the dissent. The definition of "operate" contained in the Michigan Vehicle Code requires the exercise of "actual physical control" over a motor vehicle.[25] Unlike the Court of Appeals, we cannot conclude that the statute effectively requires exclusive control "of all the functions necessary to make the vehicle operate," because such a construction does not comport with the plain language of the statutory definition.[26]

---

[25] Remarkably, the dissent accuses the majority of ignoring the statutory definition of "operate," yet the dissent approves of the Court of Appeals reliance on extraneous case law that construes the term "operate" in an insurance contract without reference to the statutory definition of "operate."

[26] The dissent claims that we misconstrue the Court of Appeals decision by suggesting that it required "exclusive control" as a predicate for "operating" the vehicle. While the panel did not use the word "exclusive," that is surely the import of its reliance on *Riddering's* test that required "control over all the parts that allow the vehicle to move, not just the steering function." *Riddering* at 703. This is amplified by the panel's own holding that "[d]efendant could not have stopped or started the vehicle, nor could he have caused it to increase or decrease in speed. Defendant could not use any of the vehicle's other instruments; therefore he was not in actual physical control of the vehicle." *Yamat* at 557.

The dissent would also require "exclusive control" because Justice Kelly finds persuasive the fact that the defendant had no "control" over even ancillary devices such as the turn signal and windshield wipers to demonstrate why his actions did not satisfy the Michigan Vehicle Code. Justice Kelly asserts that she does not advocate "exclusive control" because "[i]f two or more individuals agree to work the components of a vehicle together, then each is an operator." *Post* at 12. While the dissent's "cooperative operation" theory does not meet a strict definition of "exclusive," it still requires a concerted effort to control all of the

(continued...)

8

As applied to the facts of this case, defendant's act of grabbing the steering wheel and thereby causing the car to veer off the road clearly constitutes "actual physical control of a motor vehicle."[27] Utilizing the proper statutory definition of "operate," the prosecutor has clearly established sufficient probable cause that

_____

(…continued)

vehicle's instruments. In fact, applying the dissent's construction, because neither the driver nor the defendant had complete control over all of the car's devices, nor agreed to work together, no one was operating this vehicle at the time it struck the jogger. Justice Kelly claims that the majority has incorrectly applied her analysis because defendant's girlfriend remained in "control" despite defendant's "interference." It is difficult to square the dissent's claim that the girlfriend was in control, despite not having control over the steering wheel, with the dissent's argument that defendant did not have control because he could not control the vehicle's ancillary devices. Clearly, defendant exercised the "power to guide" the vehicle, which is the plain meaning of control that the Court of Appeals cited and we adopt. It is the dissent that refuses to give "control" its natural meaning by requiring exclusive or complete control.

[27] Under the dissent's construction of this phrase, when defendant grabbed the steering wheel and turned it, causing the vehicle to veer off the road and strike a jogger on the side of the road, he was merely "hindering" his girlfriend's control over the vehicle because "he could not have activated the headlights or turn signals." *Post* at 5. Contrary to the dissent's arguments, the person who controls the steering wheel does "'exercise restraint or direction over; dominate, regulate, or command'" a vehicle. *Post* at 2 (citation omitted). Specifically, the person who controls the steering wheel, like defendant, can command the vehicle to go in any direction he or she chooses. Arguing and causing a distraction to the driver is "hindering;" seizing the steering wheel when a car is in motion and causing the vehicle to change direction is an exercise of actual physical control.

It simply strains credulity for the dissent to suggest that because the defendant did not have control of every ancillary device, such as the windshield wipers, defendant's act of physically wrenching the steering wheel of the car was not an act of actual physical control. The dissent's analysis is not advanced by suggesting that one who turns the steering wheel of a parked vehicle cannot exercise control. *Post* at 7. Here, defendant grabbed the wheel of a *moving* vehicle and, in so doing, caused it to change direction. Defendant's action was one of "control" in every sense of the word unless, as does the dissent, one requires that there be *complete* or *exclusive* control.

defendant violated the MCL 257.626c. Because the district court applied an erroneous definition of the term "operate," it abused its discretion by refusing to bind defendant over for trial at the preliminary examination. We therefore reverse the judgment of the Court of Appeals and remand this case for trial.

Clifford W. Taylor
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

10

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                                    No.  128724

MACARIO G. YAMAT, JR.,

    Defendant-Appellee.

_____

WEAVER, J. (*concurring*).

I concur in the result and reasoning of the majority opinion with one exception.  I disagree with one of the majority's criticisms in dicta of a Court of Appeals decision, *Farm Bureau Gen Ins Co v Riddering.*[1]

I disagree with the majority's statement that *Riddering* "erred in resorting to [the principle of *contra proferentem*] without first concluding that the term 'operate' in the [insurance] contract was ambiguous."  *Ante* at 7.    A review of *Riddering* reveals that that Court of Appeals panel in that case did conclude that the contract terms at issue were susceptible to different interpretations; thus, it properly construed the contract against the drafter.  See *Klapp v United Ins Group Agency, Inc,* 468 Mich 459, 481-487; 663 NW2d 447 (2003) (Weaver, J.

_____

[1] 172 Mich App 696; 432 NW2d 404 (1988).

dissenting), and *Raska v Farm Bureau Mut Ins Co of Michigan,* 412 Mich 355, 362; 314 NW2d 440 (1982).

Elizabeth A. Weaver

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellant,

v                                    No. 128724

MACARIO G. YAMAT, JR.,

    Defendant-Appellee.

_____

CAVANAGH, J. (*dissenting*).

This Court scheduled and heard oral arguments on the prosecutor's application. 474 Mich 859 (2005). After this process, I believe that the parties' advocacy and the significance of this issue weigh in favor of granting leave to appeal. Therefore, I must respectfully dissent from today's decision. Rather than peremptorily reversing the judgment of the Court of Appeals, I would grant leave to appeal and decide this case after full briefing and oral argument.

                                Michael F. Cavanagh

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

V

No. 128724

MACARIO G. YAMAT, JR.,

      Defendant-Appellee.

_____

KELLY, J. (*dissenting*).

In this case, the majority claims that the Court of Appeals failed to apply the "plain meaning" of the words used in MCL 257.626c. This is despite the fact that the Court of Appeals referred to a dictionary and applied dictionary definitions in interpreting the words in question.

I believe that the Court of Appeals read the words as intended by the Legislature. Therefore, I would affirm its decision, along with the district court's dismissal of the charge of felonious driving and the circuit court's affirmance of the district court's decision.

THE MEANING OF "OPERATE"

Felonious driving is codified at MCL 257.626c, which provides:

> *A person who operates a vehicle* upon a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, carelessly and heedlessly in willful and wanton disregard of the rights or safety of others, or without due caution and circumspection

and at a speed or in a manner that endangers or is likely to endanger any person or property resulting in a serious impairment of a body function of a person, but does not cause death, is guilty of felonious driving punishable by imprisonment for not more than 2 years or a fine of not more than $2,000.00, or both.  [Emphasis added.]

The focus of our discussion is the meaning of the word "operates."  Although the Legislature does not define "operates" in this statute, it does offer definitions elsewhere in the Michigan Vehicle Code.  MCL 257.35a provides:

"Operate" or "operating" means being in actual physical control of a vehicle regardless of whether or not the person is licensed under this act as an operator or chauffeur.

The code also defines "operator."  "'Operator' means every person, other than a chauffeur, who is in actual physical control of a motor vehicle upon a highway." MCL 257.36.

In both definitions, the central focus is on "control."   Therefore, our interpretation of MCL 257.626c depends on the meaning of "control."  *Random House Webster's College Dictionary* (2001) defines "control" as "to exercise restraint or direction over; dominate, regulate, or command."  "Dominate" and "command" are strong words.  They demonstrate more than mere influence. [1]

---

[1] It is unlikely that the use of the strong terms "dominate" and "command" in this definition is an accident.  The *Merriam-Webster Online Dictionary* defines "control" as "to exercise restraining or directing influence over: REGULATE[.]"  See <http://www.m-w.com/dictionary/control> (accessed May 5, 2006). *Dictionary.com* defines the word as:  "To exercise authoritative or dominating influence over; direct."  See <http://dictionary.reference.com> (accessed May 5, 2006).  *The Cambridge Dictionaries Online* offers the following definition:  "to order, limit, instruct or rule something, or someone's actions or behaviour[.]" See<http://www.dictionary.cambridge.org> (accessed May 5, 2006). Just as in the

(continued...)

These terms connote a sense of power over the object. While they have some relation to influence, "dominate" and "command" carry more force. Both terms present the idea of overriding influence, which is more than *a mere* or *any* influence.

The majority's use of "control" in this case is interchangeable with "influence." This is simply inconsistent with the definition of "control." Therefore, the majority is holding the prosecution to a lesser standard than the Legislature intended and indicated by use of the term "control" in both MCL 257.35a and MCL 257.36. Had the Legislature intended to substitute the term "influence," it could have done so. Appellate courts should not easily assume that the Legislature made a mistake in drafting and inadvertently used one word when intending another. *Robinson v Detroit*, 462 Mich 439, 459; 613 NW2d 307 (2000); *Detroit v Redford Twp*, 253 Mich 453, 456; 235 NW 217 (1931). Although the majority does not expressly say so, its analysis implies it.

Here, in the simple act of grabbing the steering wheel, defendant did not dominate or command the vehicle. The undisputed facts show that the driver remained in command of all the other elements of the vehicle. For instance, the driver still dominated the gas pedal, brake pedal, ignition, emergency brake, turn signals, and windshield wipers. Defendant did not have any command over these

---

(…continued)
*Random House Webster's College Dictionary* definition, the common theme among these definitions is dominating influence or directing influence. Each definition shows more than simple influence.

3

important elements of driving. Given that defendant was not dominating the vehicle, he was not in control of the vehicle,[2] and the district court properly dismissed the charge of felonious driving.

THE DISTINCTION BETWEEN CONTROL AND INTERFERENCE

The lower courts were careful to note the distinction between control of a vehicle and interference with that control. In the majority's decision, that distinction is ignored because the majority uses "control" interchangeably with "influence." I believe that the distinction between exercising control and interfering with that control is relevant here. By ignoring it, the majority has failed to effectuate the Legislature's intent in choosing to use the term "control." The primary goal of statutory interpretation is to give effect to the Legislature's intent. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998).

*Random House Webster's College Dictionary* (2001) defines "interfere" as "to come into opposition or collision so as to hamper, hinder, or obstruct someone or something[.]" This is a concept distinct from control. In fact, it can be seen as the opposite. The person exercising control is dominating and commanding the

---

[2] *One Look Dictionary Search* offers another definition of "control" that is helpful in the analysis of this case: "verb: handle and cause to function (Example: '*Control the lever*')[.]" See <http://www.onelook.com> (accessed May 5, 2006). Defendant's actions were not what caused the car to function. The driver caused the car to function. As will be discussed later in the opinion, defendant was merely interfering with this process.

4

object.  A person interfering is hampering, hindering, or obstructing that domination or command.

This case demonstrates the salient point.  The driver of the car was in command of the vehicle.  She was exercising direction over it by regulating the gas pedal, brake pedal, emergency brake, and steering wheel.  This command caused the car to function.  Defendant, on the other hand, hampered that command by grabbing the steering wheel.  This action did not place the vehicle under his command.  Rather, it hindered and obstructed the driver's command and ability to direct the vehicle.

By seizing the wheel, defendant could not cause the car to stop.  He could not increase or decrease its speed.  And he could not have activated the headlights or turn signals.  All he could do was hamper the driver in steering the vehicle in the direction she chose.  Because this ability fits the definition of "interference" rather than "control," the Court of Appeals properly affirmed the lower courts' decisions to dismiss the felonious-driving charge.  Ignoring this distinction, the majority offers no justification for its failure to effectuate the intent of the Legislature.

THE DISCUSSION OF CIVIL CASES

Much of the majority's opinion centers on criticizing the Court of Appeals for relying on a civil case.  The Court of Appeals supported its decision with a reference to a civil case dealing with the same factual scenario as in this case, but in the context of an insurance contract, *Farm Bureau Gen Ins Co of Michigan v*

*Riddering*, 172 Mich App 696; 432 NW2d 404 (1988). Given that *Riddering* was factually close to this case and construed essentially the same term, operation, as does this case, it was wholly appropriate for the Court of Appeals to reference it.[3]

*Riddering* noted the distinction between interference and operation:

> Operation includes more than simple control as Pioneer State seems to argue on appeal. While Ms. Riddering did exercise some control over the vehicle by grabbing the steering wheel, steering is only part of operating a vehicle. Operation necessarily includes the additional functions of controlling the gas and brake pedals and all other components necessary to make a vehicle run. Operation includes control over all the parts that allow the vehicle to move, not just the steering function. Obviously, one cannot operate a vehicle only with the steering—there must be acceleration to get anywhere and there must be braking to stop the vehicle, along with control over other key components, such as the engine.
>
> We can reach no other logical conclusion on the facts of this case than that Ms. Riddering interfered with the operation of the vehicle while it was being operated by Ms. Jaarsma. Ms. Jaarsma unequivocally testified at her deposition that Ms. Riddering's actions were a surprise and without consent or permission and the trial court so found. It logically follows that Ms. Riddering's actions, in order to constitute operation or use, had to be with Ms. Jaarsma's consent or permission, because Ms. Jaarsma was operating the vehicle at the time while occupying the driver's seat. Without this needed consent, Ms. Riddering's actions did not constitute operation of the vehicle, but, rather, interference with its operation. [*Id*. at 703.]

The majority first contends that *Riddering* used some other definition of "operate" than the one appropriate for this case. Again, the majority claims that it

---

[3] As Justice Felix Frankfurter once stated, "If the purpose of construction is the ascertainment of meaning, nothing that is logically relevant should be excluded." Frankfurter, S*ome reflections on the reading of statutes,* 47 Colum L R 527, 541 (1947), quoted in Shapiro, *The Oxford Dictionary of American Legal Quotations* (New York: Oxford University Press, 1993) p 390.

is applying "the plain language." See *ante* at 1. This claim is at odds with the fact that the majority fails to state what makes its definition of "operate" different from the Court of Appeals definition in either this case or in *Riddering*.

Next, the majority claims that *Riddering* improperly stated that "[o]peration includes more than simple control . . . ." *Id.* The paragraph that followed demonstrated that the Court of Appeals was noting the difference between mere influence and the dominating or directing influence required to meet the definitions of "control" discussed before. *Riddering* noted that, while Ms. Riddering did have some influence over the vehicle, it did not rise to the level of the dominating influence necessary to reach the meaning of "operate." This is because Ms. Riddering could not command the gas and brake pedals or any of the other components necessary to make the vehicle run. Therefore, she did not have sufficient control of the vehicle to be considered an operator. *Id.*

Although the majority passes over this point, the *Riddering* conclusion is eminently consistent with common sense. Everyone who has been in an automobile knows that you cannot operate it simply by moving the steering wheel. If you sit in a parked car and move the steering wheel clockwise and counterclockwise, you will not move the vehicle. This is because it takes more than influence or "simple control" over the steering wheel to make a car function. Simply put, no one would believe that interference with a steering wheel is sufficient to operate a car. Given that the Court of Appeals reading of the statute is consistent with common sense, it should not be casually overturned.

The majority also complains that reliance on *Riddering* is inappropriate because that decision narrowly construed an exclusion in the language of an insurance contract. The majority feels that such narrow construction is inappropriate in a criminal case.[4] I disagree.

The rule of lenity should be used when construing a criminal statute. It requires that criminal statutes be construed strictly and in favor of the defendant. *United States v Wiltberger*, 18 US (5 Wheat) 76, 95; 5 L Ed 37 (1820). The rule demands sensitivity to the rights of individual defendants. *Id.* Lenity is required because, often, it provides the only means of giving fair warning to people about what behavior is criminal. Constitutionally, fair warning is given only if an ambiguity in a criminal statute is construed to apply to conduct that the statute clearly designates as criminal. *United States v Lanier*, 520 US 259, 266; 117 S Ct 1219; 137 L Ed 2d 432 (1997).

In this case, if there is any question about the level of control necessary to meet the meaning of the word "operate," it must be resolved in favor of the

---

[4] The majority also indicates that strict construction was inappropriate in *Riddering*. I disagree and add that the question is not before us and any mention of it by the majority is mere dictum. Given the nature of insurance contracts, I continue to believe that they should be strictly construed against the drafting insurance company and in favor of the insured. *Hillburn v Citizens' Mut Auto Ins Co*, 339 Mich 494, 498; 64 NW2d 702 (1954); *Kennedy v Dashner*, 319 Mich 491, 494; 30 NW2d 46 (1947). For more detail on the nature of insurance contracts, please see the "adhesion contracts" section of my dissenting opinion in *Rory v Continental Ins Co*, 473 Mich 457, 505-511; 703 NW2d 23 (2005) (Kelly, J., dissenting).

8

accused. The majority's reading creates ambiguity in this statute because it is no longer clear what level of influence over a vehicle is sufficient to meet the definition of "operate."

The rule of lenity is especially important here, given that *Riddering* held that a person's action in grabbing the steering wheel does *not* constitute operating a motor vehicle. It must be expected that the law laid down in *Riddering* would affect this defendant's understanding of what constitutes a crime under the circumstances of this case.

Fair warning mandates that it is made clear to people what the law intends to do if they cross a certain line. *Id*. at 265. "'The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'" *Bouie v Columbia*, 378 US 347, 351; 84 S Ct 1697; 12 L Ed 2d 894 (1964), quoting *United States v Harriss*, 347 US 612, 617; 74 S Ct 808; 98 L Ed 989 (1954). No one should be left to speculate about what constitutes a crime or about the meaning of a penal statute. *Bouie*, 387 US 351, quoting *Lanzetta v New Jersey*, 306 US 451, 453; 59 S Ct 618; 83 L Ed 888 (1939).

In this case, defendant and all others in the state could reasonably believe that interference with someone operating a motor vehicle would not be equated to operation of the vehicle. In changing the *Riddering* analysis, the majority holds defendant criminally responsible for conduct that he could not reasonably have

9

understood to be proscribed.  *Bouie*, 378 US 351.  This violates the constitutional right of fair notice.  *Id.*

The majority's most inexplicable criticism of the Court of Appeals decision is its claim that the Court's interpretation of the statute required the accused to have acquired "*exclusive* control" of the vehicle.  *Ante* at 1 (emphasis in original). The word "exclusive" is not used once by the Court of Appeals.  The Court of Appeals found no requirement of exclusive control.  Instead, it recognized the difference between interference and control.  It is this distinction that the majority fails to acknowledge and that apparently leads to its misinterpretation of the Court of Appeals opinion.

As discussed earlier, there is an undeniable distinction between control and interfering with control.  MCL 257.626c requires the former.  Defendant's conduct constituted the latter.  By recognizing the distinction, the Court of Appeals did not require that all control be exclusive.

Another Court of Appeals opinion in a civil case offers a good example of this point.  In *Flager v Associated Truck Lines, Inc*,[5] two girls rode together on a motor scooter.  One operated the throttle and steered.  The other operated the brake.  This ended up being a poor choice because the ride terminated in their collision with a truck.  *Flager v Associated Truck Lines, Inc*, 52 Mich App 280,

---

[5] 52 Mich App 280; 216 NW2d 922  (1974).

10

281-282; 216 NW2d 922 (1974).  To decide the case, the Court of Appeals needed to interpret the meaning of "operator."  It turned to the definition offered in the Michigan Vehicle Code, MCL 257.36.  *Flager, supra*. at 282 n 1.

The Court concluded that each girl constituted an "operator" because of their agreement to cooperate in handling the motor scooter:

> In the extremely unique facts of this case, the evidence is undisputed that both girls agreed to and had some measure of physical control over the operation of the motor scooter.  Patty, the girl who was to control the throttle and the steering, was unable to apply the brake due to the construction of the motor scooter.  The scooter could be controlled only by the two girls acting together; without the actions of one of them, an essential control function could not be performed.  The statute defines an "operator" as "every person * * * who is in actual physical control of a motor vehicle"; therefore, Vickie comes within the definition because she was one of the persons who was in control of the motor scooter.  The trial court did not err either in his ruling or instruction to the jury that Vickie was an operator of the motor scooter as a matter of law.  [*Id*. at 283, quoting MCL 257.36.]

Because of the girls' cooperation, all of the essential functions of the vehicle were controlled.  *Flager* differed from *Riddering* in that in *Riddering* there was no cooperation.  *Riddering*, 172 Mich App 703.  And it is the lack of that cooperation that marks the distinction between control and interference.  Contrary to the majority's contention, the Court of Appeals did not require exclusive control.  Instead, it required that, if two people are involved, they must work in cooperation with one another to operate a vehicle.  Otherwise, the surprise actions of one constitute interference with the other's control of the vehicle.  *People v*

*Yamat*, 265 Mich App 555, 557; 697 NW2d 157 (2005); *Riddering*, 172 Mich App 703; *Flager*, 52 Mich App 282-283.

In this case, there was no agreement to work in cooperation in order to move the vehicle. Instead, as in *Riddering*, defendant's action of grabbing the wheel came as a surprise to the person driving. Therefore, defendant interfered with the vehicle's control rather than controlled it, and the district court properly refused to bind him over for trial.

With no small amount of acerbity, the majority accuses my analysis of secretly requiring exclusive control. A simple reading of this section of my opinion disproves the accusation. I believe, as have the past courts of this state when called on to address this factual scenario, that control of a vehicle requires more than grabbing a steering wheel. But this does not mean that only one person may control a vehicle at one time. If two or more individuals agree to work the components of a vehicle together, then each is an operator. This is what was recognized in *Flager*. I believe that the Court of Appeals set forth the proper means of addressing the factual scenario presented in this case in *Flager*, *Riddering*, and *Yamat*. I see no reason to abandon this well-reasoned line of cases.

The majority finds it simpler to put words in my mouth and to attack those words than to address my true argument. A straw man is always easier to knock down. In truth, no exclusive-control requirement can be read into my opinion. What is in this opinion is the recognition of a distinction between interference and control. The majority pays no attention to this difference. In fact, it elevates

interference to the same level as control. I find this inappropriate, logically and legally. Logically, turning a steering wheel is not enough to operate a vehicle.[6] Legally, the Legislature decided to use the term "control" in MCL 257.35a and MCL 257.36. Therefore, it is inappropriate for the majority to substitute "interference" for "control."

CONCLUSION

The majority misinterprets the Court of Appeals decision. In doing so, it accuses the Court of Appeals of failing to adhere to the "plain language" of the statute. *Ante* at 1. It makes the accusation despite the fact that the Court of Appeals consulted a dictionary and properly applied its definitions to the facts of the case. This is but another example of when "plain language" in the ears of the majority has quite a different sound in the ears of others, illustrating the fragility of the concept of plain language legal analysis in the real world.

---

[6] In yet another stretch of logic, the majority claims that my interpretation means that neither defendant nor the driver was an operator at the time defendant grabbed the steering wheel. This is simply not the case. The driver continued to have control over the vehicle. Although her domination of the vehicle was *interfered* with, this does not mean her control ended. Under the majority's argument, a driver who purposefully removes his hands from the steering wheel and his feet from the pedals would no longer be operating the vehicle. Therefore, such a person would not be guilty of felonious driving even if he intentionally did this to slam the vehicle into a crowd of people. I find this illogical. When a person is in the position to have dominating command over a vehicle, the person is an operator. When someone *interferes* with that dominating command, as occurred in this case, he is not an operator. Courts in Michigan have consistently noted this distinction until now. I believe that it is the majority's analysis that "strains credulity."

13

Defendant did not operate a motor vehicle.  Instead, he interfered with the control of a motor vehicle.  Therefore, the district court properly refused to bind him over on a charge of felonious driving.  MCL 257.626c.  By reversing this decision, the majority has violated the fair notice protections of the Constitution.

I would affirm the decision of the Court of Appeals.

Marilyn Kelly